Filed 4/30/13

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| DAVID J. DUCHROW,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ERNESTINE FORREST,<br><br>    Defendant and Appellant. | B233736<br><br>(Los Angeles County<br>Super. Ct. No. BC402090) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Alan S. Rosenfield, Judge.  Reversed with directions.

Ernestine Forrest, in pro. per., for Defendant and Appellant.

Law Offices of David J. Duchrow and David J. Duchrow for Plaintiff and Respondent.

_____

Plaintiff, an attorney, represented a client, also an attorney, in a prior civil suit against the client's employer for discrimination, harassment, retaliation, wrongful termination, and other related claims. By motion, plaintiff withdrew from the case at the beginning of trial. The client could not find another attorney to represent her, and the trial court dismissed the suit.

In November 2008, plaintiff filed the present action, alleging that the client had breached the parties' retainer agreement. The complaint alleged that, under paragraph 5 of the agreement, plaintiff was entitled to a "combined hourly and contingency based rate," and under paragraph 7, he was entitled to costs. The complaint alleged that plaintiff "ha[d] been damaged in the sum of $44,082.22, plus interest."

On March 8, 2011, the case was called for trial by jury. On March 9, 10, and 11, 2011, plaintiff presented evidence and then rested. On March 11, he moved to amend the complaint to conform to proof, seeking $312,260 in attorney fees and $16,851.95 in costs, for a total of $329,111.95. The amendment was based on a new theory of liability: Under paragraph 9 of the retainer agreement—which was not mentioned in the complaint— plaintiff was entitled to recover for "all time spent" on the prior case because he had withdrawn for good cause. The client opposed the amendment. The trial court granted the motion to amend. The jury awarded plaintiff $140,056.95.

On appeal, the client contends that the trial court abused its discretion by permitting the amendment. We agree. The amendment was made on the fourth day of a five-day trial without any reason for the delay. If plaintiff had wanted to recover under paragraph 9 of the retainer agreement for *all time spent* on the case—800.65 hours according to his testimony—at $400 per hour, he could have easily included the appropriate allegations in the original complaint or moved to amend the complaint before trial. The client did not see a need to be represented by counsel or to retain an expert on attorney fee awards until the complaint was amended on the day before the case was submitted to the jury. By then, it was too late. Nor had the client attempted to determine through discovery whether plaintiff had actually spent 800.65 hours on the case or whether that was a *reasonable* amount of time. And the delay in making the amendment deprived the client of the ability

2

to research adequately whether paragraph 9 was an unenforceable provision in the contingency fee agreement. We therefore reverse the judgment and remand for a new trial.

# I

# BACKGROUND

We begin with a description of the prior suit and administrative proceedings, and then discuss the history of the present case.

## A. Prior Lawsuit and Administrative Proceedings

Ernestine Forrest, an attorney with the California Department of Corporations (Department), was suspended by the Department in early 2000 and then discharged during the period of suspension. She appealed the discharge to the State Personnel Board, which issued a decision in December 2002 ordering her reinstatement and awarding her three years of backpay. Forrest returned to work. Meanwhile, the Department filed a petition for a writ of administrative mandate, seeking to set aside the board's decision (*Department of Corporations v. California State Personnel Board* (Super. Ct. Sac. County, 2005, No. 04CS01424)). Ultimately, the superior court denied the petition.

On February 24, 2003, Forrest filed suit, in propria persona, against the Department, alleging wrongful termination, race and gender discrimination, harassment, retaliation, and breach of contract (*Forrest v. State of California* (Super. Ct. L.A. County, 2003, No. BC290873)). Before filing suit, Forrest had been declared a vexatious litigant.[1] The original complaint was never served.

After Forrest filed the complaint, she retained David J. Duchrow, Esq., to represent her. On May 14, 2003, Forrest executed an "Attorney-Client Fee Contract" with Duchrow

---

[1] In 1994, Division Five of this district declared Forrest a vexatious litigant in *Forrest v. Sargoy* (Apr. 25, 1994, B077881) (nonpub. opn.) and "issued a prefiling order pursuant to [Code of Civil Procedure] section 391.7, subdivision (a) that prohibited her from filing any new litigation in propria persona without first obtaining leave of the presiding judge of the court where the litigation was proposed to be filed." (*Forrest v. Department of Corporations* (2007) 150 Cal.App.4th 183, 188, disapproved on another point in *Shalant v. Girardi* (2011) 51 Cal.4th 1164, 1172–1173 & fn. 3.)

concerning his representation of her in the suit against the Department.  The contract stated in part:

"**1.	CONDITIONS.**  This Agreement will not take effect, and the Office will have no obligation to provide legal services, until you return a signed copy of this Agreement. . . .

"**2.	SCOPE OF SERVICES.**  You are hiring the Office to represent you in obtaining compensation and other relief for your damages, incurred in your employment with the State of California, Department of Corporations.  This Agreement covers all legal representation through trial and post-trial motions, but does not cover appeals, nor judgment or settlement collection matters.  [¶] . . . [¶]

"**3.	CLIENT'S DUTIES.**  You agree to be truthful with the Office, to cooperate, to keep us informed of developments, to abide by this Agreement, to pay our bills on time and to keep us advised of your address, telephone number and whereabouts.  [¶] . . . [¶]

"**5.	BILLING RATES FOR ATTORNEYS FEES.**  Services will be rendered on a combined hourly and contingency basis.  That is, you will be charged an hourly rate, as set forth below, plus an amount which is contingent upon, or depends upon, the monetary recovery from your case.  Each part of the fee is described below.

"HOURLY RATE:  You will be charged four hundred dollars ($400.00) per hour for time spent in representation of you on this action, including time spent on meetings, telephone calls, drafting and reviewing pleadings, motions and correspondence, travel time, and all other actions taken on your behalf.  You will be billed in units of one tenth (.1) hour.  Long distance calls (outside 213 or 310 area codes) will be billed a minimum of two tenths (.2) of an hour.  Any appearance outside of Los Angeles County will be billed a minimum of one hour.

"MAXIMUM HOURLY FEE:  The total amount of attorney fees *billed on an hourly basis will be eight thousand dollars ($8,000.00).*

"In calculating the maximum hourly fee, hours billed but not charged will not be included.  For example, if [y]ou are billed for a telephone call (i.e., it appears on your

4

billing statement), but you are not <u>charged</u> a fee for the call, the time spent on that call will not count toward the maximum hourly fee, since no fee was charged for the time.

"<u>CONTINGENCY RATE</u>: In addition to the hourly rate in the preceding paragraph, you will be charged an amount which depends upon (i.e., is contingent upon) a monetary recovery. Any contingency fee is negotiable and is not set by law (except that in any claims against a health care provider for professional negligence, the contingency fee may not exceed limits provided in California Business & Professions Code Section 6146).

"Bearing such advice in mind, *you agree to pay a contingency fee equal to forty percent (40%)* of the <u>gross recovery</u>. [¶] . . . [¶]

"Costs and disbursements incurred and advanced in connection with the prosecution or settlement of your claim shall be *<u>reimbursed after the contingency fee is computed</u>.* . . . [¶] . . . [¶]

"**7. COSTS AND OTHER CHARGES.** Various costs and expenses will be incurred in performing legal services under this Agreement. You agree to pay for those costs and expenses in addition to the fees. It is the policy of the Office not to advance costs, and it remains your responsibility to pay the costs as they are incurred. If the Office does advance a cost, the Office does not thereby waive its right to seek reimbursement for costs prior to recovery of a settlement of [*sic*] judgment.

"Common costs include costs imposed by administrative agencies, court filing fees, facsimile transmission (FAX) costs, to be billed at one dollar ($1.00) per page; photocopying, to be billed at fifteen cents ($0.15) per page; mileage, to be billed at thirty-five cents ($0.35) per mile; jury fees; witness fees, including expert witness fees; substantial long distance telephone calls; messenger and delivery fees; court reporter and transcript costs; postage including certified mail costs; parking and other local travel expenses; and other costs. [¶] . . . [¶]

"**8. BILLING STATEMENTS.** You may be sent periodic statements for fees and costs incurred. Each statement will be due within ten calendar days of its date. You may request a statement at intervals of no less than thirty (30) days. If you do, the Office will provide a statement within ten (10) days. If your account becomes 'past due' for four

5

months, you may be charged interest at the annual percentage rate of 12% simple interest, calculated monthly, plus any amounts incurred as costs or attorney's fees, in collecting past due amounts.

"If the Office represents itself in collecting past due fees or costs from you, you acknowledge that the Office will be entitled to an attorney fee equal to four hundred dollars ($400.00) per hour for such efforts.

"**9.     DISCHARGE AND WITHDRAWAL.**  *You may discharge the Office* at any time.  *The Office may withdraw* with your consent or *for good cause*.  Good cause includes your material breach of this Agreement, your refusal to cooperate with us or to follow our advice on a material matter, such as unreasonable refusal to accept a settlement, or any fact or circumstance that would render continuing representation unlawful or unethical.

"*If you do discharge the office*, prior to a settlement or judgment being obtained, *or if there is good cause, as described above, for this Office to withdraw, the Office reserves the right to bill for **all time spent** in the prosecution of your matter*."  (Italics & last boldface added, underscoring in original.)

The parties refer to this retainer agreement as "Contract 1"; we refer to it as the "Litigation Agreement."  As we discuss below, the lawsuit governed by the Litigation Agreement was dismissed involuntarily after Duchrow filed a successful motion to withdraw from the case and Forrest could not find another attorney.

On December 6, 2003, Forrest and Duchrow executed another "Attorney-Client Fee Contract."  This second contract related to Duchrow's representation of Forrest in the administrative proceedings before the State Personnel Board.  The contract provided that Forrest would pay Duchrow $275 for each hour he spent on the matter and also pay for costs.  The contract recited that Forrest would be sent periodic billing statements for attorney fees and costs; payment was due within 10 days.  If the bill was not paid within 30 calendar days of the date of the statement, Duchrow reserved the right to charge "interest at the annual percentage rate of twelve percent, or one percent per month."  The parties

6

refer to the second retainer agreement as "Contract 2"; we refer to it as the "Administrative Agreement."

Duchrow revised the original complaint, alleging claims under the California Fair Employment and Housing Act (FEHA) (Gov. Code, §§ 12900–12996) for discrimination (*id.*, § 12940, subd. (a)), harassment (*id.*, subd. (j)), retaliation (*id.*, subd. (h)), and failure to remedy discrimination and retaliation (*id.*, subd. (k)). The amended complaint also alleged common law claims for wrongful termination in violation of public policy and intentional infliction of emotional distress. It was filed and served on June 27, 2003. While the suit was pending, the Department discharged Forrest a second time.

The case was assigned to Judge Thomas L. Willhite, Jr. "[It] was set for trial in August 2004, and then continued to December 7, 2004. Prior to the December 7 trial date, Duchrow informed Forrest by facsimile that he would be withdrawing as counsel, but he did not in fact withdraw at that time. The December trial date was continued to January 18, 2005, then January 31, and then February 7. On February 4, 2005, Duchrow informed Forrest by letter that he would withdraw on February 7, but filed no motion with the court seeking to withdraw.

"A jury trial commenced February 8, 2005. After the first witness began testimony, Judge Willhite declared a mistrial when he was nominated to the Court of Appeal and became unavailable to complete the case. The case was reassigned to Judge Tricia Ann Bigelow on March 28, 2005, and a final status conference and trial were set on June 20, 2005. [¶] . . .

"On June 17, 2005, Duchrow filed a motion on shortened notice to be relieved as counsel. He simultaneously filed an ex parte application to continue the trial for 120 days to allow Forrest to retain new counsel.

"At the June 20 hearing, [the Department's] counsel indicated she did not oppose Duchrow's withdrawal; however, she did oppose the continuance because of witness health issues. . . .

"The trial court sealed the reporter's notes of an in camera hearing with Duchrow regarding his motion to withdraw and granted the motion. . . .

7

"During [the June 20 hearing, the Department] revealed that Forrest had been designated a vexatious litigant. . . .

"The court asked Forrest how much time she needed to hire another attorney. Forrest responded that 'attorneys don't like to come into this kind of circumstance.' The court then stated: '[I]f there is a necessity for continuance, I am going to have to consider that. So I will give you two weeks.' The court then set an OSC (order to show cause) hearing for July 7, 2005 're failure of plaintiff to retain counsel . . . .' In response to Forrest's question about the purpose of the July 7 OSC, the court clarified: 'For you to get new counsel . . . .' With respect to the trial date, the court stated: 'Why don't we continue the trial to the 7th, with the understanding if new counsel comes in I, obviously, am not going to make him pick up the paper and have him pick it up and go to trial that same date.'" (*Forrest v. Department of Corporations*, *supra*, 150 Cal.App.4th at pp. 189–191.)

Before the July 7, 2005 hearing, Forrest "informed the trial court [in a written response] that when first instituting the lawsuit she had difficulty locating counsel because employment attorneys advised her they did not like litigating with the government. She also stated, 'I attempted to initiate contact with a lawyer to consult after the June 20, 2005 proceedings but he was away on vacation. I now have an appointment with that lawyer on Wednesday, July 6, 2005.' . . . Forrest advised that she did not yet have counsel [and] had not yet been able to retrieve the case file from Duchrow . . . ." (*Forrest v. Department of Corporations*, *supra*, 150 Cal.App.4th at p. 191.) "The trial court set an OSC regarding dismissal for failure to retain counsel for July 22, 2005." (*Ibid.*)

On July 22, 2005, Forrest filed a declaration stating she had contacted four attorneys, one of whom could not represent her due to his schedule and two of whom could not meet with her until after July 22 to discuss the possibility of representation. She did not indicate the response she received from the fourth attorney. (*Forrest v. Department of Corporations*, *supra*, 150 Cal.App.4th at pp. 191–192.) "[T]he trial court continued the OSC to August 4, 2005." (*Id.* at p. 192.)

On July 28, 2005, the Department filed a request for dismissal pursuant to Code of Civil Procedure section 391.7, subdivision (c) (section 391.7(c)). That statute provides:

"The clerk may not file any litigation presented by a vexatious litigant subject to a prefiling order unless the vexatious litigant first obtains an order from the presiding justice or presiding judge permitting the filing. If the clerk mistakenly files the litigation without the order, any party may file with the clerk and serve, or the presiding justice or presiding judge may direct the clerk to file and serve, on the plaintiff and other parties a notice stating that the plaintiff is a vexatious litigant subject to a prefiling order . . . . The filing of the notice shall automatically stay the litigation. The litigation shall be automatically dismissed unless the plaintiff within 10 days of the filing of that notice obtains an order from the presiding justice or presiding judge permitting the filing of the litigation . . . ."

"On August 4, 2005, Forrest filed [a] response to the OSC and responded to [the Department's] request for dismissal. She explained her further efforts to retain new counsel, which consisted of a conversation with an attorney who declined to represent her due to his relationship with Duchrow and conversations with Patricia Barry who showed an interest in taking the case and agreed to appear at the August 4 hearing. Forrest opposed [the Department's] request for dismissal, arguing that her case had merit and was ready for trial.

"Ms. Barry did appear on August 4 and represented that she and Forrest were in discussions but that she had not been retained. The trial court again continued the OSC, informing Forrest that the case would be dismissed if she did not retain counsel by August 11, 2005." (*Forrest v. Department of Corporations*, *supra*, 150 Cal.App.4th at p. 192.)

"Forrest filed another update prior to the August 11, 2005 OSC. Her declaration stated she was out of town on a business trip from August 4 through August 10, that she had spoken with Patricia Barry by telephone on the evenings of August 9 and 10 and that unresolved issues remained with respect to Ms. Barry's representation. Forrest offered to 'post security so that this case can proceed to trial . . . .' . . . . [¶] . . .

"On August 12, 2005, the trial court issued its ruling, dismissing Forrest's complaint on the grounds that she had failed to retain counsel after several continuances. The trial court served notice of its ruling on all parties by mail on that date. [The

9

Department] then served notice of entry of the order dismissing the case on Forrest by express mail on August 22, 2005." (*Forrest v. Department of Corporations*, *supra*, 150 Cal.App.4th at pp. 192–193.) Forrest filed a motion for reconsideration, which was denied. She appealed the dismissal.

On appeal, Division Two of this district affirmed in a split decision. It rejected Forrest's argument that the trial court erred in allowing Duchrow to withdraw, saying: "Duchrow filed a declaration in support of his motion to withdraw stating that he had an irreparable conflict with Forrest, continued representation would require him to violate ethical rules, Forrest had breached the fee agreement and continuing would pose an extreme financial hardship on him, Forrest had rendered his continued effective employment on the case unreasonably difficult, and she refused to follow his advice. In order to protect attorney-client privileged matters, the court conducted a hearing with Duchrow in camera with a court reporter present. After the proceedings in chambers, the court explained in open court that granting Duchrow's motion to be relieved was based on matters discussed in camera." (*Forrest v. Department of Corporations*, *supra*, 150 Cal.App.4th at p. 194.)

The Court of Appeal also disagreed with Forrest's assertion that the trial court lacked authority to dismiss the suit under section 391.7(c). Forrest argued that section 391.7(c) applied to the *filing* of a lawsuit by a vexatious litigant, not to postfiling representation in an ongoing action. As the Court of Appeal stated: "[T]he statutory scheme as a whole can be reconciled by recognizing that the terms of the prefiling order— representation by counsel or permission to file—pertain throughout the life of the lawsuit. We therefore hold that the requirements of a prefiling order, under section 391.7, remain in effect throughout the life of a lawsuit and permit dismissal at any point when a vexatious litigant proceeds without counsel or without the permission of the presiding judge." (*Forrest v. Department of Corporations*, *supra*, 150 Cal.App.4th at p. 197, fn. omitted.) The Court of Appeal's resolution of this issue was subsequently disapproved in *Shalant v. Girardi*, *supra*, 51 Cal.4th at pages 1172–1173 and footnote 3. The Supreme Court held

10

that section 391.7(c) "applies only to actions *filed* in propria persona by vexatious litigants." (*Shalant*, at p. 1168, original italics.)

Finally, the Court of Appeal concluded that the trial court had not abused its discretion by failing to grant Forrest additional continuances. (*Forrest v. Department of Corporations*, *supra*, 150 Cal.App.4th at pp. 199–202.)

## B.   Present Lawsuit

On November 17, 2008, Duchrow filed this action against Forrest. The complaint contained one cause of action, for breach of contract, and alleged as follows. The parties' had entered into two retainer agreements. "Pursuant to paragraph 5 of the [*Litigation* Agreement, Duchrow] is entitled to a combined hourly and contingency based rate," and "[p]ursuant to paragraph 5 of [the *Administrative* Agreement, he] is entitled to an hourly rate of $275.00 for the time spen[t] in the administrative actions." (Italics added.) Both agreements stated that Duchrow could recover costs and further provided that Forrest was liable for 12 percent interest on overdue payments. In the body of the complaint, Duchrow alleged that Forrest had breached the agreements by failing to pay for services rendered. And "[a]s a direct and proximate result of [Forrest's] breach of the [agreements], legal fees in the amount of $44,082.22 [are] now due and unpaid." The prayer of the complaint stated that Duchrow was seeking "the sum of $44,082.22 for breach of CONTRACT and the value of its performance."

The complaint made no mention of paragraph 9, which provided that Duchrow was entitled to payment for "all time spent" on the case if he withdrew for good cause. Nor did it explain how Duchrow had calculated the damages figure ($44,082.22) or state what portion of that amount was attributable to each agreement.

Forrest responded to the complaint with a demurrer, arguing that Duchrow had not adequately pleaded a breach of contract claim, and he should have attached the retainer agreements as exhibits to the complaint. In response, Duchrow stated in his memorandum of points and authorities that "[t]he specific terms of the signed, written contracts are described in the Complaint. . . . The fee was to be a combined hourly and contingency rate." (Underscoring in original.) In support of that contention, Duchrow asserted: "The

11

Complaint . . . pleads facts to show [his] performance . . . , [Forrest's] breach . . . , causation . . . , and resulting damage . . . ." The trial court, Judge Alan S. Rosenfield presiding, overruled the demurrer and ordered that an answer be filed within 20 days. On February 10, 2010, Forrest filed an answer generally denying all material allegations of the complaint. (See Code Civ. Proc., § 431.30, subd. (d).)

Trial by jury began on March 8, 2011. During the trial, Duchrow was represented or assisted by various attorneys and appears to have been self-represented at times. He handled most of the significant tasks, such as conducting the voir dire of potential jurors, making the opening statement, cross-examining Forrest, preparing jury instructions, and presenting closing argument. Forrest was self-represented throughout the trial.

On March 9, 2011, the parties made opening statements. Duchrow told the jury that "[u]nder the terms of the [Litigation Agreement], Ms. Forrest would pay $400 per hour for the first 20 hours of time, a total of $8,000, plus a contingency fee, a percentage of the recovery. . . . [¶] Also, under that agreement, Ms. Forrest would pay for what are called costs." Duchrow stated that Forrest had paid the $8,000. He continued: "The [Litigation Agreement] also provides that the law office may withdraw from representation under certain circumstances: [¶] One, if [Forrest] doesn't pay her bills; [¶] Two, if she does not cooperate; [¶] and three, if there's continuing representation which would be either illegal or unethical . . . ." According to Duchrow, the evidence would show that Forrest had failed to pay her bills and that she was uncooperative during every phase of the case. Duchrow also argued that Forrest had created an ethical problem for him in the prior suit because she had stated to the trial court, under penalty of perjury, that "she didn't have the money to pay the court costs"—thereby obtaining a fee waiver—but subsequently failed to inform the court that her financial circumstances had changed when she received an award of over $200,000 in backpay from the State Personnel Board.

With respect to damages, Duchrow asserted that under the Litigation Agreement, he was entitled to compensation for "all of my time in the case" because he had to "withdraw for cause." He said Forrest's misconduct left him with no choice but to withdraw. Duchrow stated that he charged $400 per hour, he had spent a total of 800.65 hours on the

12

prior suit, and he would be "seeking recovery for those hours." He claimed that "[t]he total amount under [the Litigation Agreement], fees plus costs that I'll be asking for, is over $300,000."

Addressing damages under the Administrative Agreement, Duchrow said, "The total of the past due on [that agreement] for fees, costs, and interest, which is provided for in the contract, is almost $36,000."

In her opening statement, Forrest started out by saying, "This is a case that [Mr. Duchrow] described that I know nothing about. The facts are not that way." She went on to say: "Yes, I'm a lawyer, but I'm a different kind of lawyer. I'm what's called a transactional lawyer. . . . I deal with paper. . . . [¶] When I have a problem, when I have to go to court, I have to hire a trial lawyer . . . . [¶] So you're here with me in a first experience. I've never done a trial before, but I'm going to do the best I can . . . ." In Forrest's words, "I agreed to pay [Mr. Duchrow] $8,000 up front and to enter into a contingency agreement. [¶] And what that means is that, if you win, you pay the lawyer. If you don't win, you don't owe the lawyer any money." Forrest took issue with Duchrow's contention that he "withdrew" in the prior suit, saying that, instead, he had "abandoned" her.

On the witness stand, Duchrow testified that, under the Litigation Agreement, he was to be paid $400 per hour until Forrest had paid $8,000. Thereafter, the agreement was purely a contingency fee agreement. Duchrow discussed paragraph 9 of the Litigation Agreement, stating it entitled him to payment for "all time spent on the case" at $400 per hour if a client discharged him or if he withdrew for cause. He said he had spent 800.65 hours on the prior suit. Duchrow also asserted that, under the Administrative Agreement, he was entitled to a reduced billing rate of $275 per hour for all work on the matter.

Duchrow testified that Forrest had breached the Litigation Agreement (1) by not paying her bills, consisting of costs incurred after she had paid the $8,000; (2) by refusing to cooperate with his office; and (3) by engaging in conduct that would "render continuing representation unlawful and unethical." He described each of these alleged breaches in detail. Duchrow admitted that after Forrest had paid the $8,000, he no longer sent her

13

monthly bills for attorney fees—as opposed to costs—under the Litigation Agreement. As he put it, "[A]fter she had reached the $8,000 maximum hourly billing, it was a contingency fee, and there is no need to bill the client for the time because I expect my fee to come out of the recovery at the end." Duchrow also said Forrest had breached the Administrative Agreement by not paying her bills, which, in accordance with that agreement, consisted of both attorney fees and costs.

On the subject of damages, Duchrow testified he was entitled to $312,260 in attorney fees under the Litigation Agreement, plus $16,851.95 in costs, for a total of $329,111.95.[2] Under the Administrative Agreement, he said he was owed $27,777.36 in attorney fees, plus interest at 12 percent ($8,155.13), for a total of $35,932.49. Duchrow's testimony about both agreements supported a total damages award of $365,044.44.

Forrest cross-examined Duchrow. Afterward, he moved to amend the complaint to conform to proof. Duchrow stated that the complaint had requested "around $44,000" in damages. But, he said, the evidence at trial supported damages for breach of the Litigation Agreement "more along the lines of $320,000" and, for breach of the Administrative Agreement, damages of $35,932.49. Forrest opposed the amendment. Referring to paragraph 9, she said: "This case has been $44,000 throughout the period we've considered it. It's only in these last days that Mr. Duchrow, who was aware of this clause before, decided that he would use this clause in what now appears to be a test case to see if he can switch the fees. [¶] And I just totally object to letting him make that kind of change at the last minute in the pleading, what the prayer was, because the prayer has been for, what, about two years now, $44,000. [¶] If he was aware of this contract provision, if it was as prominent as he says it is, he should have been able to . . . make [me] aware of that and the effect of it long before, and in consideration [I] would have had to try and find counsel or something. It's a last-minute change that is unjustified."

_____

[2] The $312,260 figure for attorney fees was based on the total number of hours Duchrow said he worked on the case—800.65—multiplied by his hourly rate of $400, less the $8,000 Forrest had already paid in fees.

14

Duchrow responded by stating: "[T]hese figures were given to Ms. Forrest during my deposition. She's been aware of the amount I've been seeking. I don't believe a party is limited by the amount stated in the complaint since the complaint is what puts her on notice of a breach. [¶] Further, she read the [Litigation Agreement] back in 2003 and was aware of this provision, and now that I'm exercising it and now that the evidence is in, we have the correct amounts."

The trial court inquired as to when Duchrow's deposition had been taken, and Duchrow answered: "I believe it was June of 2010." Forrest added: "At which time everything had been completed. And we kept coming in, and we kept having the date changed for trial, because trial was shortly after that. July was the trial date. So we were moving toward the trial date. [¶] [I] was not on notice, the prominence that Mr. Duchrow gives to this paragraph which talks about how to withdraw, the prominence is in his head right now. It's nothing to suggest in the letters he wrote to [me]. [¶] . . . There's no notice he gave [me] of a provision like this. . . . He didn't give [me] billings to say, 'Oh, your bill is getting up to potentially it could be $100,000; $200,000; $300,000,' that would make a client turn around and look and decide: Is this worth it? [¶] He didn't do any of those things. And now here, when it was almost the week of trial, he starts this novel theory of this case being worth six times what was pled, seven, eight times." After Forrest concluded her argument, the trial court granted the motion.

Next, Forrest took the witness stand and testified in narrative form. She described the Litigation Agreement as follows: "Basically, I was to pay [Mr. Duchrow] $8,000 up front, which I did over time, taken out of my payroll, and he was to have 40 percent of my recovery. It was a contingency fee arrangement, 40 percent. And if he failed to prevail, then he didn't get anything."

On the subject of her alleged failure to cooperate, Forrest testified: "[T]here was no reason for me to create any problems for Mr. Duchrow. I did not do so. I did whatever he asked that I do." She also said that the behavior he described as uncooperative did not happen. Forrest admitted that, in response to a document demand, she "got a little behind"

15

in finding all of the relevant documents. She "rush[ed]" to get everything to Duchrow, who then "took his own time getting it to the lawyers."

Forrest disputed that she had a change in financial circumstances that created an ethical problem for Duchrow. After the mistrial was declared in the prior suit, the retrial was scheduled to begin on June 20, 2005. In May 2005, Forrest received "payroll warrants" from the State of California worth around $200,000—the amount of backpay awarded by the State Personnel Board. Nevertheless, the Department filed a petition for a writ of administrative mandate seeking to set aside that award (*Department of Corporations v. California State Personnel Board*, *supra*, No. 04CS01424). The superior court judge in the writ proceeding stated that the question of whether Forrest was entitled to backpay would not be determined until the court had ruled on the Department's writ petition. The judge instructed Forrest not to cash the warrants before the conclusion of the writ proceeding. In addition, the judge told Forrest, "You can't cash this. If you cash this and I rule against you, . . . you'll have to pay it back." Ultimately, the superior court judge denied the Department's petition on December 23, 2005—about six months *after* Duchrow had withdrawn from the prior suit. In referring to Duchrow's alleged ethical problem, Forrest testified, "There is no truth whatsoever to that."

Forrest disagreed with Duchrow's assertion that she had breached the Litigation Agreement by failing to pay his bills, which consisted of costs. She pointed out that, as stated in the Litigation Agreement, "Costs and disbursements incurred and advanced in the prosecution or settlement of your claim shall be reimbursed after the contingency fee is computed." (Underscoring in original.) No contingency fee was ever calculated.

Forrest testified that Judge Bigelow granted Duchrow's motion to withdraw after meeting with him in chambers. The reasons for granting the motion were not announced in court. That led Forrest to ask Judge Bigelow, "'Well, how do you know it's even true?'" According to Forrest, Judge Bigelow replied, "'It doesn't matter if it's true. And he's an officer of the court.'"

16

With respect to the Administrative Agreement, Forrest said she discharged Duchrow in or before June 2004 because she thought his fees were excessive and she had been overbilled.

After Forrest finished testifying, Duchrow briefly cross-examined her. He questioned her about the midtrial amendment of the complaint and her financial circumstances at the time the prior suit was to be retried before Judge Bigelow.

The trial court instructed the jury using standard instructions for a breach of contract claim. Closing arguments followed. Duchrow described his litigation experience, saying he had "tried some cases here" and had "been in front of the California Supreme Court a few times." He urged the jury to award him damages for breach of the Litigation Agreement pursuant to paragraph 9, stating he had spent 800 hours on Forrest's case, billed at $400 per hour. He summarized his own testimony about how Forrest had breached the two retainer agreements and stated he had performed all of his contractual obligations. He requested that the jury award him $324,864.45 for breach of the Litigation Agreement and $35,932.49 for breach of the Administrative Agreement, for a total award of $360,796.94.[3]

In her closing argument, Forrest asserted she had not breached the Litigation Agreement, Duchrow should not be able to rely on paragraph 9 to "change an $8,000-plus contingency agreement into a $300-some thousand agreement," and he had breached the Litigation Agreement by withdrawing in the prior suit instead of taking the case to trial. She argued that his claim under the Administrative Agreement was barred by the statute of limitations because she discharged him in or before June 2004 in connection with the State Personnel Board proceedings, and he did not file suit until November 2008. (See Code Civ. Proc., § 337.1.)

---

[3] Based on Duchrow's testimony, his damages for breach of the Litigation Agreement were $329,111.95, not $324,864.45. Duchrow has not explained why his testimony differed from the damages he requested in closing argument.

17

The jury commenced deliberations on March 14, 2011. The next day, the jury reached a verdict. In completing a special verdict form, the jury found that Duchrow was entitled to damages in the amount of $140,056.95 for breach of the Litigation Agreement and that his claim under the Administrative Agreement was barred by the statute of limitations. On April 14, 2011, the trial court entered judgment on the verdict. On the same day, the clerk of court served the parties with a notice of entry of judgment. Forrest filed motions for new trial and judgment notwithstanding the verdict, both of which were denied. She filed a timely appeal.

## II

## DISCUSSION

On appeal, Forrest contends the trial court erred by granting Duchrow's midtrial motion to amend the complaint, the jury instructions were flawed, the judgment was not supported by substantial evidence, the award of damages was excessive, and the trial court erred by excluding evidence regarding her income and by excluding certain witnesses. We conclude the trial court erred in granting the motion to amend and reverse on that basis. Duchrow offered no reason for the delay in seeking the amendment; the amendment changed the relevant facts and the theory of liability, significantly increasing the damages requested, warranting additional discovery and the use of an expert witness on attorney fee awards, making representation by counsel all the more important, and requiring research to determine the enforceability of paragraph 9; and the amendment resulted in prejudice.

We first dispose of Forrest's contention that the judgment was not supported by substantial evidence and then address the granting of Duchrow's motion to amend the complaint to conform to proof.

## A.    Substantial Evidence

Forrest's assertion that the judgment was not supported by substantial evidence is based primarily on Duchrow's failure to represent her in the prior suit "through trial." But Duchrow testified he was excused from continuing to represent Forrest because, as alleged in the complaint, she had breached both retainer agreements by, among other things, refusing to pay for services rendered. The testimony of a single witness may constitute

18

substantial evidence. (See *Hope v. California Youth Authority* (2005) 134 Cal.App.4th 577, 589.) And contrary to Forrest's contention, Duchrow's testimony about damages was sufficient regardless of whether he submitted any documentation to support what he said. (See *Mardirossian & Associates, Inc. v. Ersoff* (2007) 153 Cal.App.4th 257, 269–270.)

Forrest argues that some of Duchrow's evidence was not "credible." But where there is conflicting evidence on an issue, we do not review the jury's implicit determination of credibility. (See *Kelly v. CB&I Constructors, Inc.* (2009) 179 Cal.App.4th 442, 452; *Palm Medical Group, Inc. v. State Comp. Ins. Fund* (2008) 161 Cal.App.4th 206, 218.) And to the extent Forrest relies on posttrial statements made by jurors to explain how they calculated damages, we cannot consider her arguments. (See Evid. Code, § 1150, subd. (a); *Grobeson v. City of Los Angeles* (2010) 190 Cal.App.4th 778, 786; *Bell v. Bayerische Motoren Werke Aktiengesellschaft* (2010) 181 Cal.App.4th 1108, 1124.)

Thus, the judgment was supported by substantial evidence.

## B.      Midtrial Amendment of the Complaint

"Code of Civil Procedure section 473, subdivision (a)(1) permits a court, 'in furtherance of justice,' to 'allow a party to amend any pleading . . . in any . . . respect.' The trial court's ruling on a motion to amend a pleading is reviewed under an abuse of discretion standard . . . , and the appellant has the burden of establishing its discretion was abused. . . . Generally, 'the trial court has wide discretion in determining whether to allow the amendment, but the appropriate exercise of that discretion requires the trial court to consider a number of factors: "including the conduct of the moving party and the belated presentation of the amendment. . . .""" (*Emerald Bay Community Assn. v. Golden Eagle Ins. Corp.* (2005) 130 Cal.App.4th 1078, 1097, citations & italics omitted.)

"Courts must apply a policy of liberality in permitting amendments at any stage of the proceeding, including during trial, when no prejudice to the opposing party is shown. . . . 'However, "'even if a good amendment is proposed in proper form, unwarranted delay in presenting it may—of itself—be a valid reason for denial.""" (*P&D Consultants, Inc. v. City of Carlsbad* (2010) 190 Cal.App.4th 1332, 1345; accord, *Huff v.*

19

*Wilkins* (2006) 138 Cal.App.4th 732, 746.) "Thus, [if the trial court denies a motion to amend during trial,] appellate courts are less likely to find an abuse of discretion where, for example, the proposed amendment is '"offered after long unexplained delay . . . or where there is a lack of diligence . . . ."'" (*Melican v. Regents of University of California* (2007) 151 Cal.App.4th 168, 175.) "Where the trial date is set, the jury [has been] impaneled, counsel, the parties, the trial court, and the witnesses have blocked the time, and the only way to avoid prejudice to the opposing party is to continue the trial date to allow further discovery, refusal of leave to amend cannot be an abuse of discretion." (*Magpali v. Farmers Group, Inc.* (1996) 48 Cal.App.4th 471, 488.)

"[Code of Civil Procedure section] 469 specifically governs motions to amend at trial to conform to proof . . . . [It] provides in relevant part as follows: 'No variance between the allegation in a pleading and the proof is to be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits.' Such amendments at trial to conform to proof, 'if not prejudicial, are favored since their purpose is to do justice and avoid further useless litigation.' . . .

"As summarized by our Supreme Court in *Trafton v. Youngblood* (1968) 69 Cal.2d 17, 31: '[T]he allowance of amendments to conform to the proof rests largely in the discretion of the trial court and its determination will not be disturbed on appeal unless it clearly appears that such discretion has been abused. . . . Such amendments have been allowed with great liberality "and no abuse of discretion is shown unless by permitting the amendment *new and substantially different issues are introduced in the case or the rights of the adverse party prejudiced* . . . ." . . .' Conversely, '"amendments of pleadings to conform to the proofs should not be allowed when they *raise new issues not included in the original pleadings* and upon which the adverse party had *no opportunity to defend*. . . ." . . .' . . .

"'The cases on amending pleadings during trial suggest trial courts should be guided by two general principles: (1) whether facts or legal theories are being changed and (2) whether the opposing party will be prejudiced by the proposed amendment. Frequently, each principle represents a different side of the same coin: If new facts are

20

being alleged, prejudice may easily result because of the inability of the other party to investigate the validity of the factual allegations while engaged in trial or to call rebuttal witnesses. If the same set of facts supports merely a different theory . . . no prejudice can result.' . . . 'The basic rule applicable to amendments to conform to proof is that the amended pleading must be based upon the same general set of facts as those upon which the cause of action or defense as originally pleaded was grounded.'" (*Garcia v. Roberts* (2009) 173 Cal.App.4th 900, 909–910, citations omitted, italics added & omitted; accord, *North 7th Street Associates v. Constante* (2001) 92 Cal.App.4th Supp. 7, 10.)

As stated by a leading treatise, in ruling on a motion to amend a complaint to conform to proof, "the court is usually guided by whether: [¶] . . . there is a *reasonable excuse* for the delay; [¶] . . . the change relates to the *facts* or only to legal theories; and [¶] . . . the opposing party will be *prejudiced* by the amendment." (Wegner et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 2012) ¶ 12:393, p. 12-79, original italics.)

## 1. Delay in Seeking Amendment

Duchrow filed the present action on November 17, 2008, to recover attorney fees, costs, and interest allegedly owed for his work in the prior suit and the administrative proceedings. Judgment was entered in the prior suit on August 12, 2005, and Forrest discharged Duchrow in the administrative proceedings in or before June 2004. Thus, Duchrow had more than three years to file an adequately pleaded complaint. There was no rush to get something filed.

Further, although this action was filed in November 2008, Duchrow did not move to amend the complaint until March 11, 2011—on the fourth day of a five-day trial. He waited more than two years to allege a substantial increase in damages (from $44,082.22 to $365,044.44) and to change the theory of liability under the Litigation Agreement from paragraph 5—a 40 percent contingency fee—to paragraph 9—which permitted a recovery for "all time spent" on the case if Duchrow withdrew for good cause. Paragraph 5 was described in the complaint; paragraph 9 was not referenced in the complaint, directly or indirectly. Yet, as Duchrow stated in his opposition to Forrest's demurrer: "[T]he *specific*

21

*terms* of the signed, *written contracts* are *described in the Complaint. . . .* The fee was to be a *combined hourly and contingency rate*." (Italics added, underscoring omitted.) In moving to amend the complaint, Duchrow took a contrary position: He invoked paragraph 9, which was not mentioned, much less "described," in the complaint; and the "combined hourly and contingency rate" became only an hourly rate—$400 per hour for 800.65 hours—with no contingency.

Duchrow offered no explanation for the delay other than to say at trial that he gave Forrest the new damages figures during his deposition, and "I don't believe a party is limited by the amount stated in the complaint since the complaint is what puts [Forrest] on notice of a breach." But mentioning new figures at Duchrow's deposition did not put Forrest on notice that Duchrow intended to rely on a new theory of liability at trial to obtain significantly greater damages than the amount sought in the original pleading. In arguing for the amendment in the trial court, Duchrow did not produce the pertinent pages of his deposition transcript, nor has he cited them in the record on appeal. As a result, we do not know what was said at his deposition. The statements Duchrow made to the trial court in support of the amendment constitute argument, not evidence. (See *South Sutter, LLC v. LJ Sutter Partners, L.P.* (2011) 193 Cal.App.4th 634, 668, fn. 14; *Gdowski v. Gdowski* (2009) 175 Cal.App.4th 128, 138–139.)

Before filing the complaint, Duchrow had all of the necessary information to include the appropriate allegations if he wanted to recover damages under paragraph 9; he knew or could have easily determined how many hours he had spent on the prior suit and the amount of costs he had incurred. In short, the midtrial amendment was made unreasonably late and without a reasonable excuse for the delay. "'"'[E]ven if a good amendment is proposed in proper form, unwarranted delay in presenting it may—of itself—be a valid reason for denial.'"'" (*P&D Consultants, Inc. v. City of Carlsbad*, *supra*, 190 Cal.App.4th at p. 1345.) And the amendment was "'"'offered after long unexplained delay . . . [and] where there [was] a lack of diligence . . . .'"'" (*Melican v. Regents of University of California*, *supra*, 151 Cal.App.4th at p. 175.)

22

## 2.  Nature of Amendment

The amendment allowed Duchrow to seek damages under paragraph 9 of the Litigation Agreement, which permitted a recovery for "all time spent" on the case if he withdrew for good cause.  In contrast, the original complaint sought relief under paragraph 5 of the Litigation Agreement, which required Forrest to pay for the first 20 hours of Duchrow's work ($8,000)—which she did—and entitled Duchrow to 40 percent of any recovery.  Before trial, Forrest's defense was simple:  Because there was no recovery, Duchrow was not entitled to any attorney fees.  (See *Hyon v. Selten* (2007) 152 Cal.App.4th 463, 472, fn. 2; *Jalali v. Root* (2003) 109 Cal.App.4th 1768, 1777.)

But under the midtrial amendment, Duchrow's theory of liability for breach of the Litigation Agreement turned on whether he had good cause to withdraw, resulting in an attack on every perceived wrong Forrest allegedly committed.  And Forrest's defense no longer involved a contingency fee agreement but, instead, required her to respond to multiple charges of improper conduct.  In addition, the question of whether Duchrow had actually spent 800.65 hours on the prior suit became a central issue, as did whether 800.65 hours was a reasonable amount of time.  Consequently, under the amendment, "'new and substantially different issues [were] introduced in the case.'"  (*Trafton v. Youngblood*, *supra*, 69 Cal.2d at p. 31, italics omitted.)  The amendment "'raise[d] new issues not included in the original pleadings.'"  (*Ibid.*, italics omitted.)

## 3.  Prejudice

The amendment of the complaint prejudiced Forrest in several ways.  First, it changed the damages sought from $44,082.22, as pleaded in the complaint, to $312,260 in attorney fees and $16,851.95 in costs under the Litigation Agreement, plus an additional $27,777.36 in attorney fees and $8,155.13 in accrued interest under the Administrative Agreement, for a total of $365,044.44.  In closing argument, Duchrow asked the jury to award him $360,796.94.  The jury obviously took the amendment into consideration because it awarded Duchrow $140,056.95—more than three times the amount requested in the complaint.

Second, had Forrest known about the new damages theory before the discovery cut-off date, she could have used one or more discovery methods to determine if Duchrow had in fact spent 800.65 hours on the prior suit. As she testified at trial: "[Mr. Duchrow] hadn't submitted any bills over time to allow [me] to know about the accumulating funds." "I've seen no bills I have to pay." And Duchrow testified that after Forrest had paid $8,000 for the first 20 hours of his work, he no longer billed her for attorney time under the Litigation Agreement. The amendment entitled Forrest to conduct discovery to determine the total number of hours Duchrow had spent on the prior suit and the specific tasks he had performed. Because a continuance was necessary to permit further discovery and the trial was nearing its end, the motion to amend should have been denied. (See *Magpali v. Farmers Group, Inc.*, *supra*, 48 Cal.App.4th at p. 488.)

Third, Forrest could have retained an expert on attorney fee awards, and called him or her as a witness at trial to testify about whether $312,260 was a *reasonable* amount of attorney fees. (See *Mardirossian & Associates, Inc. v. Ersoff*, *supra*, 153 Cal.App.4th at pp. 272–273; *Bernardi v. County of Monterey* (2008) 167 Cal.App.4th 1379, 1395–1396; Wegner et al., Cal. Practice Guide: Civil Trials and Evidence, *supra*, ¶¶ 4:282.35, 8:713.2, pp. 4-73 to 4-74, 8C-88.)

Fourth, if Forrest had known earlier about Duchrow's new theory of liability, she would have given more thought to accepting his offer to compromise (see Code Civ. Proc., § 998) or would have seriously considered settling the case. As Forrest stated in opposing the amendment, if she had known before trial that Duchrow was going to seek damages under paragraph 9, she would have asked herself, "Is this worth it?"

Fifth, Forrest was a transactional attorney with no litigation experience. Duchrow was a seasoned trial attorney. When Duchrow testified on direct examination at trial, he had another attorney, Marc Coleman, ask him questions. Duchrow's testimony was presented in an orderly and understandable fashion. Forrest, on the other hand, took the stand and testified in the narrative. Her testimony was not easy to follow and was the subject of several meritorious objections. If Forrest had known before trial that Duchrow would ask the jury to award him $360,796.94, she would have retained counsel. As our

24

Supreme Court has acknowledged: "'"The adage that 'a lawyer who represents himself has a fool for a client' is the product of years of experience by seasoned litigators."'" (*PLCM Group v. Drexler* (2000) 22 Cal.4th 1084, 1092–1093.)  While a transactional attorney might reasonably decide to represent herself as a defendant in a suit for $44,082.22, Forrest would have heeded the foregoing adage if she had known Duchrow would end up requesting $360,796.94 in damages.

Last, if Duchrow had made a timely motion to amend, Forrest would have conducted legal research and argued that paragraph 9 was unenforceable.  As noted, paragraph 9 permitted Duchrow to recover attorney fees for "all time spent" on a case if he was discharged by a client or if he withdrew from representation for good cause.

Forrest could have made a colorable argument—one we do not decide—that, at most, Duchrow was entitled to recover in quantum meruit for the reasonable value of his services, not $400 for every hour he supposedly worked on the case (800.65 hours).  It is well established that under a contingency fee agreement, when a client discharges an attorney, with or without good cause, the attorney may recover under a theory of quantum meruit for the reasonable value of his or her services.  (*Fracasse v. Brent* (1972) 6 Cal.3d 784, 790–791; Vapnek et al., Cal. Practice Guide:  Professional Responsibility (The Rutter Group 2012) ¶¶ 5:1034 to 5:1034.1, p. 5-126 (hereafter Vapnek).)  Similarly, under a contingency fee agreement, when an attorney withdraws from representation based on "justifiable cause," he or she is entitled to recover in quantum meruit.  (*Rus, Miliband & Smith v. Conkle & Olesten* (2003) 113 Cal.App.4th 656, 671–676; *Estate of Falco* (1987) 188 Cal.App.3d 1004, 1012–1016; Vapnek, *supra*, ¶¶ 5:1073 to 5:1079, pp. 5-135 to 5-137.)

In contrast, an attorney who withdraws without justifiable cause may not recover any attorney fees under a contingency fee agreement.  (*Rus, Miliband & Smith v. Conkle & Olesten*, *supra*, 113 Cal.App.4th at pp. 672–676; *Estate of Falco*, *supra*, 188 Cal.App.3d at pp. 1014–1017; Vapnek, *supra*, ¶¶ 5:1070 to 5:1071, p. 5-135.)  And the granting of a motion to withdraw does not ipso facto establish justifiable cause for a quantum meruit recovery.  (See *Rus, Miliband & Smith v. Conkle & Olesten*, at pp. 673–674; *Estate of*

25

*Falco*, at p. 1014; Vapnek, *supra*, ¶¶ 5:1085 to 5:1085.1, 10:49, pp. 5-137 to 5-138, 10-11.)

"Where justifiable cause for withdrawal is shown, the attorney's right to quantum meruit recovery for services rendered is the same as where the attorney has been discharged after partial performance." (Vapnek, *supra*, ¶ 5:1087, p. 5-138.) A quantum meruit recovery requires a trial court to consider several factors: "'[t]he nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure of the attorney's efforts, the attorney's skill and learning, including his [or her] age and experience in the particular type of work demanded.'" (*Mardirossian & Associates, Inc. v. Ersoff*, *supra*, 153 Cal.App.4th at p. 272.)

In her opening brief, Forrest states, "A line of cases including . . . *Estate of Falco*[, *supra*, 188 Cal.App.3d 1004] . . . and more recently *Rus, Miliband & Smith v. Conkle & Olesten*[, *supra*, 113 Cal.App.4th 656], . . . have supported a conclusion that where an attorney abandons or withdraws from a case and there is no recovery, as is true here, without a finding of good cause and possibly even with one, the abandoning, withdrawing attorney cannot recover fees."

When an attorney seeks a recovery in quantum meruit after withdrawing from a case for ethical reasons, he or she "'has the burden of proof to show: (1) counsel's withdrawal was mandatory, not merely permissive, under statute or State Bar rules; (2) the overwhelming and primary motivation for counsel's withdrawal was the obligation to adhere to these ethical imperatives under statute or State Bar rules; (3) counsel commenced the action in good faith; (4) subsequent to counsel's withdrawal, *the client obtained recovery*; and (5) counsel has demonstrated that *his* [*or her*] *work contributed in some measurable degree towards the client's ultimate recovery*.'" (*Rus, Miliband & Smith v. Conkle & Olesten*, *supra*, 113 Cal.App.4th at p. 674, fn. 10, italics added.)

Because we are reversing the judgment and remanding the case for a new trial on Duchrow's cause of action for breach of the May 14, 2003 contract, Forrest may challenge the validity of paragraph 9 in the first instance before the trial court.

# III

## DISPOSITION

The judgment is reversed, and the case is remanded for a new trial on plaintiff's cause of action for breach of the May 14, 2003 contract.  Defendant is entitled to costs on appeal.

CERTIFIED FOR PUBLICATION.


                                        MALLANO, P. J.

We concur:


ROTHSCHILD, J.


JOHNSON, J.