Filed 3/11/14  Maiorano v. Howell CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JOSEPH G. MAIORANO,<br><br>        Plaintiff, Cross-defendant and Respondent,<br><br>        v.<br><br>JOSEPH A. HOWELL,<br><br>        Defendant, Cross-complainant and Appellant. | D062233<br><br><br>(Super. Ct. No. 37-2011-00085328 CU-MC-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Frederic L. Link, Judge.  Affirmed.

Robert J. Pecora for Defendant, Cross-complainant and Appellant.

No appearance for Plaintiff, Cross-defendant and Respondent.

Attorneys Joseph G. Maiorano and Joseph A. Howell became involved in a fee dispute over the apportionment of $165,000 in attorney fees earned in an underinsured

motorist (UIM) case, Howell claiming he had provided valuable services in connection with the UIM case via his work performed on the client's third party personal injury claim and workers' compensation matters. After a bench trial, the court entered judgment in Maiorano's favor for the full $165,000 fee. On appeal, Howell asks that the judgment be reversed and a new trial granted on grounds the court (1) prejudicially erred by refusing to apply an unclean hands defense to bar Maiorano's claim for an equitable share of the fees; (2) erred by refusing to consider Howell's work on the workers' compensation matter in fixing the reasonable amount of fees in the UIM case; and (3) abused its discretion in denying Howell's motion during trial to amend his pleadings to conform to proof.

Maiorano has not filed a respondent's brief in this matter. California Rules of Court, rule 8.200 states: "Each respondent must serve and file a respondent's brief." (Cal. Rules of Court, rule 8.200(a)(2).) This rule provides that if the respondent does not timely file a brief, this court "may decide the appeal on the record, the opening brief, and any oral argument by the appellant." (Cal. Rules of Court, rule 8.220(a)(2).) We elect to do so, and will not treat Maiorano's failure to file a respondent's brief as a default or an admission that the trial court erred. (*In re Marriage of Riddle* (2005) 125 Cal.App.4th 1075, 1078, fn. 1.) Rather, we agree the better practice is to examine the record on the basis of Howell's brief and reverse only if prejudicial error is found. (See *In re Bryce C.* (1995) 12 Cal.4th 226, 232-233.) Applying this procedure, we affirm the judgment.

2

FACTUAL AND PROCEDURAL BACKGROUND[1]

In March 2007, Kristen Osegueda was injured in a car accident during the course of her employment. She retained Howell in June 2007 to represent her in a personal injury action (the third party action) against the other involved driver as well as a workers' compensation case. Howell obtained medical benefits for Osegueda through her employer's workers' compensation carrier, Travelers Indemnity Company of Connecticut (Travelers Indemnity) and Osegueda was also receiving weekly temporary disability benefits from Travelers Indemnity. But by February 2009, Osegueda had become dissatisfied with Howell's efforts and responsiveness to her repeated calls.

As of October 2009, Howell had obtained a copy of Osegueda's employer's underinsured motorist policy, written two letters tendering claims for underinsured motorist coverage and demanding arbitration, and settled Osegueda's third party action for the other driver's insurance policy limits of $250,000. Out of the third party

---

[1]   The background facts are taken from the reporter's transcript of proceedings, viewed in the light most favorable to the judgment in Maiorano's favor. In setting out the facts, we observe Howell's factual recitation is incomplete, argumentative, and does not provide record references for many of its assertions. (Cal. Rules of Court, rule 8.204(a)(1)(C) ["Each brief must: . . . [¶] Support any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears."].) We disregard factual and procedural assertions in Howell's appellate brief that are not supported by record citations. (*Sharabianlou v. Karp* (2010) 181 Cal.App.4th 1133, 1149.) Further, Howell's summary of facts in support of his unclean hands argument cites entirely to lodged trial exhibits by exhibit number alone, without precise page references or any trial testimony pertaining to those exhibits. Thus, his chronological recitation of facts in support of this argument consists only of characterizations of select exhibits in his favor.

settlement, he paid himself approximately $83,333 for his own fees and costs. By November 2009, Howell confirmed that Osegueda had $1 million in underinsured motorist coverage with Travelers Property Casualty Company of America (the UIM insurer). Though the UIM insurer asked Howell several times to forward all medical reports for Osegueda's injuries due to the accident and medical reports for any prior neck and back injuries, Howell did not respond to those requests, believing the UIM insurer was in contact with Travelers Indemnity. Rather, Howell began negotiating a third party credit agreement with the subrogation division of Travelers Indemnity.[2] Osegueda was not aware of Howell's efforts, however, because he did not return her phone calls.

---

[2]     An employer or employer's workers' compensation carrier that has paid workers' compensation benefits to an employee whose industrial injury was caused, in whole or in part, by the negligence of a third party, may seek reimbursement for the benefits paid and for certain other expenses from the third party. (*State Comp. Ins. Fund v. Workers' Comp. Appeals Bd.* (1997) 53 Cal.App.4th 579, 582 & fn. 1.) "The employer may seek reimbursement by (1) filing an independent action against the third party (Lab. Code, § 3852), or (2) by intervening in the employee's lawsuit against the tortfeasor (Lab. Code, § 3853), or (3) by asserting a lien against the employee's recovery in the third party lawsuit (Lab. Code, §§ 3856, subd. (b); 3862). . . . [¶] . . . [R]eimbursement applies to benefits paid *prior to* a third party judgment or settlement. With respect to *future* workers' compensation benefits due the injured party, a different mechanism applies— credit. An employer is entitled to a credit against its obligation to pay further compensation benefits in the amount of the worker's *net* recovery against the third party tortfeasor. (Lab. Code, §§ 3858, 3861.)" (*State Comp. Ins. Fund*, at pp. 582-583, footnotes omitted.) " 'The right to credit and to a lien are separate and distinct, and waiver of the latter does not necessarily mean waiver of the credit right. Nor does a lien recovery, by way of a judgment or settlement in the third-party action, constitute a waiver of the right to claim a credit or to have determined the amount of any credit to be allowed in the compensation proceedings.' " (*Id.* at p. 583, quoting 1 Hanna, Cal. Law of Employee Injuries and Workers' Compensation (1996) § 11.42[5][a], pp. 11-107, fns. omitted.)

4

In February 2010, Osegueda retained Maiorano and fired Howell. Osegueda signed a substitution of attorneys form for her workers' compensation appeals board (WCAB) case so that Maiorano could obtain control of $166,203.31 remaining in Howell's client trust account. Because Howell knew monies could not be distributed to the client without a workers' compensation judge's approval, he offered to Maiorano to complete at no charge the WCAB credit agreement finalized and approved by the workers' compensation judge. Maiorano declined the offer, and thereafter began issuing checks to Osegueda from his client trust account.[3] Osegueda signed a retainer agreement with Maiorano on July 15, 2010. Maiorano issued an additional check to Osegueda from his client trust account five days after she signed his retainer agreement, and other checks in October and November of 2011. He did so because Osegueda needed money, and after Maiorano had spoken with other workers' compensation personnel, as well as Osegueda, he decided there was only a slight risk that the workers' compensation insurer would cut off benefits if he paid her some of the money. Maiorano also believed that the workers' compensation insurer's lien would possibly decrease, but not increase, so he felt it safe to pay Osegueda some of the funds within his trust account. Maiorano denied that he and Osegueda discussed paying out money to her before she hired him.

In August 2010, Osegueda and Maiorano executed the WCAB credit agreement negotiated by Howell, which acknowledged Travelers Indemnity had asserted a $157,627.42 workers' compensation lien in Osegueda's third party action but had agreed

---

3    Maiorano paid Osegueda $20,000 on February 9, 2010, and another $20,000 on May 10, 2010.

to accept $100,000 as payment in full, to be paid from Osegueda's $250,000 settlement. In November 2008, Maiorano wrote a check to Travelers Indemnity for $100,000 but Travelers Indemnity did not receive the check. He cut another check out of his general business account, but he misread his ledger and the check was returned for insufficient funds. Travelers redeposited the check, which then cleared. Once Travelers Indemnity had deposited the $100,000, the UIM insurer sent a $100,000 check made out to Maiorano and Osegueda.

Maiorano testified about his efforts on the UIM case. Because the UIM insurer did not have Osegueda's medical records and Maiorano noticed the records he received from Howell were incomplete, Maiorano proceeded to order all of Osegueda's medical and billing records directly from her providers, including films, x-rays and scans, and sent them to the UIM insurer. He estimated he spent about 51 hours of his time reviewing records and exhibits, setting up Osegueda's recorded statement, scheduling a separate examination, hiring and meeting with a vocational rehabilitation expert, and speaking numerous times with Osegueda and her husband. He negotiated a $10,000 advance of pre-settlement funds for Osegueda from Travelers Indemnity. He dealt with Osegueda's physician to obtain a narrative report of her prognosis, future necessary treatment or surgeries, and any complications or limitations she had due to her injuries. Maiorano estimated his assistants spent approximately 25 hours on the case. Though the UIM case was open, Maiorano described his work as "soup to nuts," and included gathering the medical records, obtaining evidence of Osegueda's lost earnings and tax returns, discussing Osegueda's future care and treatment as well as the vocational

6

rehabilitation expert's report with the adjuster, and working with the adjuster to figure the UIM insurer's credit and what was left over for Osegueda. According to Maiorano, the only useful information he obtained from Howell on the UIM case was the insurer's address and the claim number. Eventually, Maiorano settled the case for $495,000, just under what was left on the UIM policy.

Maiorano sued Howell for declaratory relief, seeking a judicial determination as to the apportionment of the $165,000 in legal fees for the UIM case. Howell cross-complained against Maiorano for intentional interference with contract. He alleged Maiorano interfered with his attorney-client relationship with Osegueda by representing to her that he would immediately distribute settlement funds Howell had received on her behalf despite the fact that such distribution without the workers' compensation carrier's consent would adversely affect her. Howell further alleged Maiorano made "unethical and illegal" disbursements of settlement proceeds and subrogation funds, which unreasonably delayed Howell's receipt of attorney fees in the workers' compensation action.

The matter proceeded to a bench trial. At the close of Maiorano's case, Howell's counsel orally moved to amend his pleading to conform to proof so as to state a cause of action for conversion, relying on *Plummer v. Day/Eisenberg, LLP* (2010) 184 Cal.App.4th 38. Counsel argued Howell held a lien on the value of any recovery produced in the UIM case, and that the lien extended to the $165,000 settlement but "could have been much more." The trial court denied the motion, distinguishing *Plummer* and stating Howell's theory was "totally illusory." Thereafter, the trial court

7

found there was no evidence to support Howell's interference with contract claim and dismissed it. It ruled Howell did nothing toward the UIM claim; and that Maiorano, who did the work on that claim, should receive the full $165,000 fee.

Howell asked the court to issue a statement of decision addressing whether he had performed any work on the UIM claim and explaining the basis for several of the court's other rulings. The court issued a judgment and statement of decision on April 23, 2012. It found Howell represented Osegueda from 2007 until February 2010, initially on all three claims. It found that the third party claim was closed, Osegueda received nothing, and Howell received $86,340 for his attorney fees on that claim. The court found that Howell failed to stay in contact with Osegueda during the handling of the claims, causing Osegueda to retain Maiorano, who completed the workers' compensation claim for no fee and obtained statements, medical reports and records in connection with the UIM claim. It found Howell had done nothing toward the UIM claim, summarized Maiorano's efforts, and found Maiorano had done all work of value in the UIM claim and deserved the fee. The court ruled Howell presented no facts or evidence to support his other motions and his request that the court apply the unclean hands defense.

On April 27, 2012, Maiorano served notice of entry of the judgment.[4] Howell timely filed this appeal.

---

[4] After Maiorano served his notice of entry of judgment, Howell objected to the statement of decision on various grounds. On appeal, Howell does not explain the impact of his objections on our consideration of his claims. He has not identified any material issues or ultimate facts left unaddressed by the court's final statement of decision, nor does he address the effect, if any, of his objections on our appellate review. " ' "The

8

DISCUSSION

I. *Unclean Hands Defense*

During his closing argument, Howell's counsel argued that Maiorano's conduct amounted to unclean hands, barring his equitable claim. He pointed to Maiorano's assertedly false representations resulting in a dispute between Osegueda and a pre-settlement funding company, Maiorano's retention by Osegueda without a written contingency fee agreement, and Maiorano's asserted personal use of Osegueda's funds in his client trust account. The trial court found the doctrine did not apply to the dispute between Howell and Maiorano, and the types of matters raised by Howell were irrelevant to an unclean hands defense.

Howell contends the court prejudicially erred by failing to apply the unclean hands equitable defense to Maiorano's declaratory relief cause of action. He maintains, in view of the court's ruling that the defense was inapplicable and irrelevant, we must review the question de novo. There is support for de novo review on this point, but decisions on the applicable standard of review differ. (See *Brown v. Grimes* (2011) 192 Cal.App.4th 265, 274 [application of unclean hands doctrine to a particular transaction "is a legal issue
_____

court's statement of decision is sufficient if it fairly discloses the court's determination as to the ultimate facts and material issues in the case." ' " (*Pannu v. Land Rover North America, Inc.* (2011) 191 Cal.App.4th 1298, 1314, fn. 12.) The trial court is not required to make an express finding of fact on every factual matter controverted at trial, where the statement of decision sufficiently disposes of all the basic issues in the case. (*In re Marriage of Burkle* (2006) 139 Cal.App.4th 712, 736-737, fn. 15.) Howell has not given us any basis to conclude the statement of decision did not sufficiently address the ultimate facts and material issues. Thus, in assessing his contentions, we imply findings to support the judgment where appropriate. (*Heaps v. Heaps* (2004) 124 Cal.App.4th 286, 292.)

9

reviewed de novo" and where court determines the doctrine is legally inapplicable, it need not decide the standard of review]; but see *Dickson, Carlson & Campillo v. Pole* (2000) 83 Cal.App.4th 436, 447 [decision whether to apply the doctrine of unclean hands based on the facts "is a matter within the trial court's discretion" and "depends on the analogous case law, the nature of the misconduct, and the relationship of the misconduct to the claimed injuries"]; *Unilogic, Inc. v. Burroughs Corp.* (1992) 10 Cal.App.4th 612, 620 [application of unclean hands doctrine raises primarily a question of fact].)  We need not decide whether this is the proper standard of review, however, because under any standard, Howell has not demonstrated the trial court prejudicially erred by ruling the defense inapplicable.

A.  *Legal Principles*

The unclean hands doctrine "arises from the maxim that one who comes to court seeking equity must come with clean hands.  [Citation.]  'The doctrine demands that a plaintiff act fairly in the matter for which he seeks a remedy.' "  (*Jay Bharat Developers, Inc. v. Minidis* (2008) 167 Cal.App.4th 437, 445.)  It is typically invoked when the one seeking equitable relief " 'has violated conscience, or good faith, or other equitable principle, in his prior conduct.' "  (*General Electric Co. v. Superior of Alameda County* (1955) 45 Cal.2d 897, 899-900.)

" ' "Whether the defense [of unclean hands] applies in particular circumstances depends on the analogous case law, the nature of the misconduct, and the relationship of the misconduct to the claimed injuries." '  [Citation.]  The focus is the equities of the relationship between the parties, and specifically whether the unclean hands affected the

transaction at issue." (*Jaramillo v. County of Orange* (2011) 200 Cal.App.4th 811, 820.) In that vein, "[t]he misconduct that brings the clean hands doctrine into play must relate directly to the cause at issue. Past improper conduct or prior misconduct that only indirectly affects the problem before the court does not suffice. The determination of the unclean hands defense cannot be distorted into a proceeding to try the general morals of the parties. [Citation.] Courts have expressed this relationship requirement in various ways. The misconduct 'must relate directly to the transaction concerning which the complaint is made, i.e., it must pertain to the very subject matter involved and affect the equitable relations between the litigants.' [Citation.] '[T]here must be a direct relationship between the misconduct and the claimed injuries . . . " 'so that it would be inequitable to grant [the requested] relief.' " ' [Citation.] 'The issue is not that the plaintiff's hands are dirty, but rather " ' "that the manner of dirtying renders inequitable the assertion of such rights against the defendant." ' " ' [Citation.] The misconduct must ' " 'prejudicially affect . . . the rights of the person against whom the relief is sought so that it would be inequitable to grant such relief.' " ' " (*Kendall-Jackson Winery, Ltd. v. Superior Court* (1999) 76 Cal.App.4th 970, 979; *Arthur v. Davis* (1981) 126 Cal.App.3d 684, 693-694; *Carman v. Athearn* (1947) 77 Cal.App.2d 585, 598 [misconduct constituting unclean hands must "infect the cause of action before the court"].) The defense " 'does not apply in every instance where the plaintiff has committed some misconduct in connection with the matter in controversy, but applies only where it would be inequitable to grant the plaintiff *any* relief.' " (*O'Flaherty v. Belgum* (2004) 115 Cal.App.4th 1044, 1099.)

11

"Not every wrongful act constitutes unclean hands. But, the misconduct need not be a crime or an actionable tort. Any conduct that violates conscience, or good faith, or other equitable standards of conduct is sufficient cause to invoke the doctrine." (*Kendall-Jackson Winery, Ltd. v. Superior Court, supra*, 76 Cal.App.4th at p. 979.)

B. *Analysis*

It is difficult to pinpoint from Howell's briefing what precisely Maiorano did to constitute unclean hands in connection with his and Howell's attorney fee dispute. Ignoring the trial court's contrary findings and the evidence supporting those findings, Howell maintains he (Howell) "had already done the substantially [*sic*] majority of work required to settle the [UIM] case and had asserted charging liens against any recovery" which Maiorano assertedly initially refused to honor in an effort to keep the entire fee for himself. Howell points out Maiorano took the position that Howell's fee agreement violated attorney rules of professional conduct. Howell argues Maiorano's initial refusal to honor Howell's charging lien is "just the tip of the iceberg of a trial record which is teeming with inferences of . . . Maiorano's impropriety as evidenced by his conduct throughout this litigation." Howell then purports to provide a "detailed summary of the record testimony." This summary, however, consists not of the parties' trial testimony, but of Howell's own discourse and characterization of select trial exhibits. This alone results in a forfeiture of his argument. (*Chicago Title Ins. Co. v. AMZ Ins. Services, Inc.* (2010) 188 Cal.App.4th 401, 415-416 [when appellant fails to fairly state all material record evidence the court of appeal deems waived any challenge to its sufficiency]; see also *Hauselt v. County of Butte* (2009) 172 Cal.App.4th 550, 563.)

12

Even if we were to accept Howell's chronology of events, it merely purports to show:

• At the time he substituted into the workers' compensation case and received the $166,203.31 from Howell's trust account, Maiorano did not have a written contingency fee agreement with Osegueda or a fee disclosure statement for the workers' compensation matter;

• Maiorano distributed monies to Osegueda before the WCAB credit agreement was finalized and before he and Osegueda entered into a contingent fee agreement;

• Maiorano failed to appear at or delayed WCAB hearings in Osegueda's case;

• Maiorano did not obtain a retainer agreement from Osegueda until July 2010;

• Maiorano did not have a signed medical authorization for Osegueda at the time a Travelers adjuster requested it;

• Maiorano paid Osegueda monies from his general account as an advance;

• Maiorano and Osegueda entered into an agreement to accept pre-settlement funding from a finance company, Cambridge Management Group, LLC, and assigned a lien that was superior to Maiorano's contingency fee and case preparation costs;

• In early November 2010, Maiorano issued a $100,000 check to Travelers to pay its workers' compensation lien and then claimed the check was lost without putting a stop payment on the check;

• Maiorano wrote another $100,000 check to Travelers from his general account to replace the prior check, but the bank later returned the check returned for insufficient funds;

13

• When Howell notified Maiorano of his lien, Maiorano disputed it as an unauthorized exercise of control over Osegueda's money, but agreed to deposit the disputed fees into an interest bearing account;

• After Travelers issued a $220,000 check to Osegueda and Maiorano's law office, Maiorano presented Osegueda with the check without depositing it into his client trust account;

• In December 2010, Maiorano inquired with Travelers about his and Howell's fee dispute, and asked for clarification as to how it obtained Osegueda's medical records and bills for the UIM claim;

• On January 18, 2011, Travelers issued its $100,000 check to Osegueda and Maiorano, and the next day paid Howell his workers' compensation fee;

• Cambridge Management Group, LLC has sued Osegueda and Maiorano over funds owed it by Osegueda.

Other than reciting the general legal principles applicable to the unclean hands defense, Howell does not set out coherent argument or authorities demonstrating that the above-described actions fall within the standards for conduct constituting unclean hands. To the extent any of this conduct can be characterized as inequitable, unfair, taken in bad faith, or improper, Howell has not demonstrated how the assertedly inequitable or wrongful conduct should affect Maiorano's assertion of his equitable rights *as against Howell* in connection with their fee dispute. (*Kendall-Jackson Winery, Ltd. v. Superior Court*, *supra*, 76 Cal.App.4th at p. 979 [misconduct must render inequitable the assertion of rights against the defendant].) In short, looking at the nature of the misconduct, the

14

relationship of the misconduct to the claimed injuries, the equitable relationship between Howell and Maiorano and whether the misconduct infects the cause of action before the court, we conclude the majority of Maiorano's asserted actions, which relate to his relationship with Osegueda, do not *directly* affect the question of whether he or Howell should recover fees in Osegueda's UIM case. And, to the extent Maiorano disputed Howell's lien, the evidence shows that Maiorano agreed to deposit the funds into an interest bearing account, and appropriately sought a judicial declaration as to the attorneys' entitlement to those funds. That conduct, as a matter of law, cannot constitute unclean hands in connection with the attorney fee dispute.

## II. *Howell's Quantum Meruit Arguments*

Howell contends the trial court prejudicially erred by "refusing to consider [his] work performed in the [workers' compensation] case in fixing the reasonable amount of fees earned in the [UIM] case." According to Howell, the principles of *Fracasse v. Brent* (1972) 6 Cal.3d 784 would require that he recover under a theory of quantum meruit the reasonable value of services he rendered before Osegueda discharged him. He points out the trial court found he did no work on the UIM case, even though Maiorano's counsel at trial assertedly argued Howell was entitled to "at least between $1,000 and $2,500 in earned fees for his work in the [UIM] case." Howell concludes, "Given the previously raised facts and argument, [his] three years of work on the [workers' compensation case] should be considered in determining the reasonable value of service in the [UIM] case."

We reject these cursory arguments. Preliminarily, Howell misstates Maiorano's counsel's closing argument. Maiorano's counsel argued that Howell and his office spent

15

less than one hour on the case at Howell's $475 hourly rate, and that $475 to $1,000 would be adequate compensation but he recommended between $500 and $2,500 as an award. The trial court was not required to accept counsel's recommendation, and it found to the contrary that Howell "did nothing" toward the UIM claim, stating, "and that is backed up by his own testimony, by the information from the Travelers people, and from Mr. Maiorano's own testimony." In the final judgment the court repeated this factual finding, stating Howell "did nothing of value [in the UIM case] and is entitled to no share of the fee."

More fatally, Howell has not argued that the trial court's factual findings are based on insufficient evidence and therefore he does not explain why Maiorano's testimony about his efforts on the UIM case are insufficient as a matter of law to award Maiorano the entire contingent fee. Finally, Howell's claim was against Maiorano, not Osegueda, for the reasonable value of his services under a theory of intentional interference with contract. He did not allege a cause of action for quantum meruit, which would have been brought against Osegueda for the work he performed on her case. Thus, the principles of *Fracasse v. Brent*, *supra*, 6 Cal.3d 784, involving a client's absolute right to discharge an attorney with whom she had entered into a contingent fee agreement (*id*. at p. 790), and the attorney's right to quantum meruit recovery against his or her former client on the occurrence of any contingency contemplated by the contract (*id*. at p. 791), have no bearing on Howell's claim against Maiorano.

16

### III. *Motion for Leave to Amend to Conform to Proof*

Howell contends the court abused its discretion by denying his motion to amend his cross-complaint to conform to proof. He maintains Maiorano had notice of and could not be prejudiced by addition of a conversion claim because Howell's cross-complaint alleged that by failing to pay the $100,000 workers' compensation lien, Maiorano caused a delay in Howell receiving his workers' compensation fee. Howell further maintains the evidence established a prima facie case of conversion against Maiorano for interfering with both Howell's lien on Osegueda's UIM claim, and the timely payment of monies owed to Howell for services rendered in the workers' compensation matter.

### A. *Legal Principles*

The allowance of amendments to conform to proof rests largely in the discretion of the trial court, whose determination will not be disturbed on appeal absent a showing of a clear abuse of discretion. (*Trafton v. Youngblood* (1968) 69 Cal.2d 17, 31; see Code Civ. Proc., § 473, subd. (a)(1); *Duchrow v. Forrest* (2013) 215 Cal.App.4th 1359, 1378.) " ' "Such amendments have been allowed with great liberality 'and no abuse of discretion is shown unless by permitting the amendment *new and substantially different issues are introduced in the case or the rights of the adverse party prejudiced . . . .*' . . ." Conversely, " 'amendments of pleadings to conform to the proofs should not be allowed when they *raise new issues not included in the original pleadings* and upon which the adverse party had *no opportunity to defend.*' " ' " (*Duchrow v. Forrest*, at p. 1378.)

" ' "The cases on amending pleadings during trial suggest trial courts should be guided by two general principles: (1) whether facts or legal theories are being changed

17

and (2) whether the opposing party will be prejudiced by the proposed amendment. Frequently, each principle represents a different side of the same coin: If new facts are being alleged, prejudice may easily result because of the inability of the other party to investigate the validity of the factual allegations while engaged in trial or to call rebuttal witnesses. If the same set of facts supports merely a different theory . . . no prejudice can result." . . . "The basic rule applicable to amendments to conform to proof is that the amended pleading must be based upon the same general set of facts as those upon which the cause of action or defense as originally pleaded was grounded." ' " (*Duchrow v. Forrest*, *supra*, 215 Cal.App.4th at p. 1378.)

"[I]n ruling on a motion to amend a complaint to conform to proof, 'the court is usually guided by whether:  [¶] . . . there is a *reasonable excuse* for the delay;  [¶] . . . the change relates to the *facts* or only to legal theories; and  [¶] . . . the opposing party will be *prejudiced* by the amendment.' " (*Duchrow v. Forrest*, *supra*, 215 Cal.App.4th at pp. 1378-1379.)

B.  *Analysis*

To state a cause of action for conversion, a plaintiff need only allege his or her " ' "ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages." ' " (*Shopoff & Cavallo LLP v. Hyon* (2008) 167 Cal.App.4th 1489, 1507.)  It is settled that " ' "[c]onversion is the wrongful exercise of dominion over the property of another." ' " (*Plummer v. Day/Eisenberg, LLP*, *supra*, 184 Cal.App.4th at p. 45; see also *Hernandez v. Lopez* (2009) 180 Cal.App.4th 932, 939; *Burlesci v. Petersen* (1998) 68

18

Cal.App.4th 1062, 1065.)  The foundation for a conversion claim " 'rests upon the unwarranted interference by defendant with the dominion over the property of the plaintiff from which injury to the latter results.' "  (*Burlesci v. Petersen*, at p. 1066.)

Howell's theory of conversion is that Maiorano exercised wrongful dominion and control over his workers' compensation fee—$6,343.02 in the possession of Travelers Indemnity—by bouncing the check he wrote in satisfaction of Traveler's lien.  Howell argues that as a result, the payment of his fee was "delayed for months."  Howell does not explain how Maiorano exercised dominion over those funds in a manner sufficient to convert them to his own use.  (*Shopoff & Cavallo LLP v. Hyon*, *supra*, 167 Cal.App.4th at pp. 1507-1508 [complaint failed as a matter of law to state a claim for conversion against a trustee of allegedly converted settlement recovery proceeds who had filed an interpleader action, which avoided the risk of liability to the person entitled to those proceeds; as a matter of law, the trustee did not exercise dominion over the funds sufficient to convert them to his own use].)  Nor does Howell provide an explanation of his damage or loss as a result of the asserted months long delay in payment.

Under these circumstances, we need not decide whether the trial court abused its discretion in denying Howell's request for leave to amend during trial.  Even if we were to conclude the trial court should have allowed Howell to argue a cause of action for conversion, we cannot presume its error was prejudicial to Howell.  The determination of prejudice must be based on the specific circumstances of the case.  "The burden is on the appellant in every case to show that the claimed error is prejudicial; i.e., that it has resulted in a miscarriage of justice."  (*Cucinella v. Weston Biscuit Co.* (1954) 42 Cal.2d

19

71, 82.)  Howell has made no showing of prejudice, and thus we cannot conclude the court's decision to deny his request to amend his pleading to conform to the proof adduced at trial was actually unjust, that is, that the trial court would have rendered a different award had Howell been permitted to assert a conversion claim.

DISPOSITION

The judgment is affirmed.

O'ROURKE, J.

WE CONCUR:

BENKE, Acting P. J.

AARON, J.