Filed 8/31/20  Clear9 Communications v. Futurewei Technologies etc. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| CLEAR9 COMMUNICATIONS, LLC,<br><br>     Plaintiff, Appellant, and Cross-Respondent<br><br>     v.<br><br>FUTUREWEI TECHNOLOGIES, INC. AND HUAWEI TECHNOLOGIES USA, INC.,<br><br>     Defendants, Respondents, and Cross-Appellants.<br><br>HUAWEI TECHNOLOGIES USA, INC.,<br><br>     Defendant, Respondent and Cross-Appellant. | D076208<br><br><br>(San Bernardino County Super. Ct. No. CIV DS 1312899) |

APPEALS from an order of the Superior Court of San Bernardino County, Wilfred J. Schneider, Judge.  Affirmed.

Shannon Gallagher for Plaintiff, Appellant and Cross-Respondent.

Bryan A. Merryman, J. Taylor Akerblom, White & Case, LLP for Defendants, Respondents and Cross-Appellants.

Clear9 Communications, LLC (Clear9), based in Southern California, is a provider of cellular telecommunications infrastructure equipment. In 2009, Clear9 entered into a Distribution Agreement with Futurewei Technologies, Inc. and Huawei Technologies USA, Inc. (collectively Huawei) to sell equipment manufactured by Huawei. After years of difficulty between the contracting parties, Clear9 eventually sued Huawei for breach of contract and various tort claims. By the time the case reached trial, six of Clear9's claims remained for adjudication: four claims for interference with prospective economic relations based on Huawei's direct sales to Clear9's customers; a claim for tortious interference with contractual relations between Clear9 and one of its customers, Leaco Rural Telecommunications Cooperative (Leaco); and one claim for breach of the Distribution Agreement. After a 10-day trial, the jury returned a special verdict in favor of Clear9 on each claim, awarding damages of over $2.6 million.

Post-trial, Huawei moved for judgment notwithstanding the verdict (JNOV) and, in the alternative, a new trial. The trial court granted JNOV in part, and the motion for new trial in the alternative if its ruling on the JNOV were reversed on appeal. The trial court agreed with Huawei's assertion that Clear9's four claims for interference with prospective economic relations were barred because those claims were based on conduct that constituted breach of the parties' Distribution Agreement. The court also concluded that the $88,000 awarded by the jury for Clear9's breach of contract claim was for special damages, which were precluded by the Distribution Agreement's limitation of liability provision. The court rejected Huawei's argument that

2

the $302,890 damage award for its tortious interference with Clear9's contract with Leaco were also barred as special damages.

Both Clear9 and Huawei have appealed the court's order. Clear9 asserts the court erred by overturning the jury's verdict on its four claims for interference with prospective economic relations because Huawei forfeited its assertion that the wrongful conduct found by the jury could not form the basis for the claims as a matter of law. Clear9 also contends that even if the issue is not forfeited, other evidence of wrongful conduct supports the jury's special verdicts. Clear9 next argues the limitation of liability provision in its contract with Huawei is unenforceable. Finally, Clear9 challenges the court's denial of its motions to amend its complaint and for prejudgment interest.

In its cross-appeal, Huawei asserts that the court erred by rejecting its challenge to the jury's damage award on Clear9's claim for tortious interference with its contract with Leaco. As set forth herein, we reject both parties' challenges to the trial court's rulings and affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

In October 2009, Clear9 entered into the Distribution Agreement, which designated Clear9 as a distributor of Huawei's "wireless and wireline network products and solutions" in a territory defined as the United States of America. The target market for the products and solutions was smaller, regional cellular telephone carriers. Under the Distribution Agreement, Clear9 would work with Huawei to determine what Huawei products and solutions were appropriate for various carriers, then implement those products and solutions for the carrier with Huawei's support. Clear9's principals were experienced in the industry and believed they could help Huawei and the carriers they were targeting expand cellular service in rural areas of the country.

3

At the time the Distribution Agreement was entered, Clear9 had existing relationships with two such carriers, Leaco and Flat Wireless, LLC (Flat). The Distribution Agreement contained a non-exclusive list of carriers for Clear9 to target, which included Leaco but not Flat. The Distribution Agreement also contained a standard limitation of liability provision stating that Huawei could not be held liable to Clear9 "for lost profits, diminution of good will, or any other indirect, incidental, consequential, punitive or other special damages . . . ."

In November 2010, Clear9 entered into a separate contract with Leaco, with Huawei's knowledge and support, to upgrade Leaco's network using Huawei's equipment. After the contract with Leaco was executed and Clear9 began the installation process, problems with Huawei's equipment quickly developed. Huawei repeatedly stymied Clear9 in its attempts to fix the new network's issues. Testimony and evidence at trial showed Clear9 pleading with Huawei representatives throughout 2011, 2012, and into 2013 to help it obtain the functionality Leaco required. Witnesses for Clear9 and Leaco testified there were large quantities of dropped calls, failed calls, and other problems with the network, including the inability to dial 911. Leaco officials also testified that network problems resulted in large losses of customers, threatening the viability of its business.

Clear9 absorbed some of Leaco's costs related to the problematic Huawei equipment, giving Leaco over $300,000 in discounts on the amounts Leaco owed Clear9 under their contract. In addition, throughout this two-and-a-half-year period, the agreement between Leaco and Clear9 required Clear9 to maintain a bond for the full amount of the $3 million-plus contract. The bond premiums over that period cost Clear9 $88,000. In 2013, Leaco finally abandoned the system that it contracted with Clear9 to provide, and

worked directly with Huawei to purchase additional equipment at significant expense to avoid losing its investment in the upgrade project.

Thereafter, Clear9 attempted to engage in dispute resolution with Huawei as required by the Distribution Agreement. When that effort failed, Clear9 engaged counsel and on October 22, 2013, filed the instant lawsuit. Initially, Clear9 pleaded five causes of action: (1) breach of contract, alleging Huawei breached the Distribution Agreement; (2) tortious interference with contract, related to the Leaco agreement; (3) tortious interference with prospective business advantage (as to the Leaco agreement); (4) tortious interference with prospective business advantage (as to the Flat agreement); and (5) violation of California's unfair competition law (Bus. & Prof. Code § 17200, et seq.). Clear9 also sought a punitive damage award. Huawei counterclaimed, alleging Clear9 failed to make required payments under the Distribution Agreement.

By the time of trial, Clear9 was pursuing all but its unfair competition law claim against Huawei. Before trial, Huawei brought a motion in limine to exclude evidence of punitive and special damages, or alternatively to bifurcate the punitive damage phase of trial. The motion asserted that Clear9's only valid claim was for breach of contract, and that Clear9's tort claims were merely an attempt to circumvent the contract. Huawei argued evidence of damages for the tort claims should be precluded by the Distribution Agreement's limitation of liability provision.

Clear9 opposed the motion to exclude special damages, but agreed to bifurcate punitive damage evidence. At a pretrial conference the court considered Huawei's motion in limine. During the discussion, Huawei asserted that all of the tortious conduct alleged by Clear9 constituted breach of the Distribution Agreement and thus was not actionable. After initially

stating it was prepared to grant the motion to exclude special damages, the court concluded that all compensatory damage evidence could be admitted subject to later objection by Huawei. The court also accepted the parties' agreement to bifurcate punitive damage evidence.

Trial began on January 10, 2017. Clear9's witnesses testified that Huawei breached the Distribution Agreement by interfering with its provision of equipment and services to Leaco, including failing to provide equipment that functioned properly, failing to provide adequate support for its equipment, and engaging in direct negotiations with Leaco for the sale of its products. Clear9's witnesses also testified that Huawei sold or attempted to sell equipment to Leaco, Flat, and other cellular telephone companies in violation of the Distribution Agreement's provision designating Clear9 as the distributor for those companies. Huawei's principal contact and project manager for Clear9, Sharon Chua, countered with testimony that Huawei went above and beyond what the Distribution Agreement required to attempt to remedy the problems Leaco encountered. Chua also testified that the sales Huawei made directly to Leaco and Flat occurred only after the expiration of the Distribution Agreement.

At one point during her examination, Chua testified that she did not believe all sales of equipment made by Clear9 to Leaco fell under the Distribution Agreement. After this testimony, Clear9 made an oral motion to amend its complaint to add a new claim for breach of contract in addition to the alleged breaches of the Distribution Agreement. The trial court asked Clear9 to brief the issue and Clear9 submitted a written motion near the close of evidence. The court denied the motion, and the parties finished the presentation of evidence and closing arguments.

The parties initially presented a set of proposed jury instructions and special verdict forms to the court before the initial trial date in October 2016.[1] At that time, Huawei's proposed forms for the interference with prospective economic relations claims asked the jury if it "engaged in independently wrongful conduct" while Clear9's version asked whether Huawei "engaged in conduct to impair Clear9's ability to sell equipment to [Flat/Leaco/Third Parties]?" The parties submitted the same proposals in January before trial began. At a conference after the close of evidence, the parties agreed without any recorded discussion on the final versions of the special verdict forms that were given to the jury.

Thereafter, the jury was instructed on and provided special verdict forms for Clear9's six claims[2] and Huawei's four counter-claims.[3] After a half-day of deliberation, the jury returned its verdict in favor of Clear9 on its claims, awarding Clear9 $2,363,390 in total damages consisting of $88,000 for breach of contract, $302,890 for tortious interference with the Leaco contract, and $1,972,500 for the four interference with prospective economic relation claims, and rejecting Huawei's claims.

The court entered judgment for Clear9 on March 24, 2017. Thereafter, Clear9 filed a motion for prejudgment interest, and Huawei brought its

---

[1] The trial was postponed to January 2017 to accommodate a witness's schedule.

[2] These were: (1) breach of contract, (2) intentional interference with contractual relations with Leaco, (3) intentional interference with prospective economic relations with Leaco, (4) intentional interference with prospective economic relations with Flat, (5) negligent interference with prospective economic relations with Leaco, and (6) negligent interference with prospective economic relations with Flat.

[3] Huawei's claims were: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing,(3) provision of goods and services, and (4) account statement.

7

motions for JNOV and new trial. In its challenge to the jury's verdicts on the four interference with prospective economic relations claims, Huawei asserted the verdicts required reversal because they were based only on conduct that constituted a breach of the Distribution Agreement, and therefore that conduct could not be wrongful as a matter of law. In its opposition to the motion for JNOV, Clear9 argued that because Huawei assisted in the preparation of the special verdict forms it waived its challenge to the claims. Clear9 also asserted evidence of other wrongful conduct supported the jury's verdicts.

After briefing and a hearing on the motions, on May 25, 2017, the trial court issued its order granting Huawei's motion for JNOV as to the four claims for interference with prospective economic relations, concluding the claims failed as a matter of law because the only wrongful conduct alleged by Clear9 to support them also constituted a breach of the Distribution Agreement. The court also accepted Huawei's challenge to the damages awarded for Clear9's breach of contract claim, concluding the award was for special damages that were excluded by the Distribution Agreement's limitation of liability provision. In addition, the court granted a new trial in the alternative. Lastly, the trial court denied the motion for JNOV as to the jury's verdict on Clear9's claim for tortious interference with contractual relations with Leaco and denied Clear9's motion for prejudgment interest. Both parties challenge the court's post-trial order.

DISCUSSION

I

*Intentional and Negligent Interference with Prospective Economic Relations*

Clear9 asserts the trial court erred by granting Huawei's motion for JNOV for its four claims for tortious interference with prospective economic relations: intentional and negligent claims related to Huawei's business dealings with Leaco and intentional and negligent claims related to its dealings with Flat. Recognizing the law is not on its side substantively, Clear9's appeal is focused on forfeiture. Clear9 argues that Huawei submitted special verdict forms and jury instructions that improperly allowed the jury to determine what act satisfied the wrongful conduct standard and that the doctrine of invited error precluded the court from considering Huawei's JNOV. Alternatively, Clear9 argues that even if the trial court did not err by reaching the merits of Huawei's motion for JNOV, the jury's findings on these claims are supported by sufficient evidence of other wrongful conduct.

As we explain in further detail, we reject these arguments and conclude Huawei did not forfeit its challenge to the jury's special verdicts on Clear9's four interference with prospective economic advantage claims. The law is clear that to find liability, the jury was required to determine whether Huawei engaged in wrongful conduct that was not also a breach of contract. Here, over Huawei's repeated assertions that Clear9 had failed to allege wrongful conduct that was not also a violation of the Distribution Agreement, Clear9 asked the jury to find Huawei liable for these claims based solely on such conduct. This was not an error precipitated by Huawei's failure to object to the special verdict forms. Rather, despite Huawei's repeated assertions that the interference with prospective economic advantage claims

9

were legally untenable, Clear9's improper framing of these claims prevailed. Further, because Clear9's claims were adjudicated using special verdict forms, this court cannot now infer findings in Clear9's favor based on evidence of other wrongful conduct.

A

"[T]he purpose of a JNOV is 'to prevent the moving defendant from the necessity of undergoing any further exposure to legal liability when there is insufficient evidence for an adverse verdict.'" (*Grail Semiconductor, Inc. v. Mitsubishi Electric & Electronics USA, Inc.* (2014) 225 Cal.App.4th 786, 794.) "The trial judge's power to grant a judgment notwithstanding the verdict is identical to his power to grant a directed verdict. [Citations.] The trial judge cannot weigh the evidence [citation], or judge the credibility of witnesses. [Citation.] If the evidence is conflicting or if several reasonable inferences may be drawn, the motion for judgment notwithstanding the verdict should be denied. [Citations.] 'A motion for judgment notwithstanding the verdict of a jury may properly be granted only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence to support the verdict. If there is any substantial evidence, or reasonable inferences to be drawn therefrom, in support of the verdict, the motion should be denied.'" (*Hauter v. Zogarts* (1975) 14 Cal.3d 104, 110; accord, *Sweatman v. Department of Veterans Affairs* (2001) 25 Cal.4th 62, 68.)

"On appeal, we review the motion de novo. '[W]e determine whether substantial evidence supported the verdict, viewing the evidence in the light most favorable to the party who obtained the verdict. [Citation.] We resolve all conflicts in the evidence and draw all reasonable inferences in favor of the verdict, and do not weigh the evidence or judge the credibility of witnesses.'"

10

(*Linear Technology Corp. v. Tokyo Electron Ltd.* (2011) 200 Cal.App.4th 1527, 1532.)

B

The line between competitive business conduct and unlawful interference with prospective economic advantage is often difficult to pinpoint.[4]  (See *Della Penna v. Toyota Motor Sales, U.S.A., Inc.* (1995) 11 Cal.4th 376, 392 (*Della Penna*) ["Because ours is a culture firmly wedded to the social rewards of commercial contests, the law usually takes care to draw lines of legal liability in a way that maximizes areas of competition free of legal penalties."].)  The elements of intentional interference with prospective economic advantage are "(1) the existence, between the plaintiff and some third party, of an economic relationship that contains the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentionally wrongful acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm proximately caused by the defendant's action."  (*Roy Allan Slurry Seal, Inc. v. American Asphalt South, Inc.* (2017) 2 Cal.5th 505, 512.)

"The elements of negligent interference with prospective economic advantage are (1) the existence of an economic relationship between the plaintiff and a third party containing the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) the defendant's knowledge (actual or construed) that the relationship would be disrupted if the defendant failed to act with reasonable care; (4) the defendant's failure to act with reasonable care; (5) actual disruption of the relationship; and (6) economic harm proximately caused by the defendant's

_____

4    The phrases "interference with prospective economic relations" and "interference with prospective economic advantage" are used interchangeably.

11

negligence." (*Redfearn v. Trader Joe's Co.* (2018) 20 Cal.App.5th 989, 1005.) " 'The difference between intentional interference and negligent interference with prospective economic advantage relates to the defendant's intent.' " (*Id.* at p. 1006.)

To state a claim for either negligent or intentional interference with prospective economic advantage a plaintiff "has the burden of pleading and proving that the defendant's interference was wrongful 'by some measure beyond the fact of the interference itself.' " (*Della Penna, supra*, 11 Cal.4th at pp. 392-393; see *Ixchel Pharma, LLC v. Biogen, Inc.* (Aug. 3, 2020, No. S256927) 2020 WL 4432623, at *5 (*Ixchel*)[5]; *Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1159 (*Korea Supply*) ["an act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard"].) Further, there must be wrongful conduct that is independent of a breach of contract by the defendant. (See *JRS Products, Inc. v. Matsushita Electric Corp. of America* (2004) 115 Cal.App.4th 168, 183 (*JRS Products*) ["a breach of contract claim cannot be transmuted into tort liability by claiming that the breach interfered with the promisee's

---

5      While this appeal was pending, the California Supreme Court issued *Ixchel*, which extended the independently wrongful conduct requirement to a claim of interference with the performance of an "at-will" contract. (*Ixchel, supra*, 2020 WL 4432623, at *8-9.) The court's holding was based on the similarity between a third party's interference in an at-will contractual arrangement and interference with a prospective economic relationship. The court held that like a prospective economic relationship, "[a]t-will contractual relations are . . . not cemented in the way that a contract not terminable at will is. The interest in protecting the contract from interference more closely resembles the interest in protecting prospective economic relationships than the interest in protecting a contractual relationship that, by its terms, is expected to continue on pain of breach." (*Id.* at p. *8.) *Ixchel* reaffirms settled law that independently wrongful conduct is required for a claim of interference with prospective economic advantage, and not required for claims of interference with contractual relations that do not involve at-will contracts. (*Ibid.*)

business"]; *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 516-517 ["The fundamental differences between contract and tort are obscured by the imposition of tort liability on a contracting party for conspiracy to interfere with the contract. Whether or not a stranger to the contract induces its breach, the essential character of a contracting party's conduct remains the same—an unjustified failure or refusal to perform."].) Put another way, damages cannot "be recovered for interference with prospective economic advantage by one contracting party against another based on conduct that would otherwise constitute a breach of the parties' contract." (*JRS Products, supra*, 115 Cal.App.4th at p. 179.)

## C

Huawei's motion for JNOV sought to invalidate the jury's verdict on the grounds that the wrongful conduct found by the jury also constituted a breach of the Distribution Agreement. Huawei correctly asserted that the law does not permit a breach of contract to support a claim for tortious interference with prospective economic advantage and the trial court agreed. Specifically, the trial court found that the conduct set forth in the special verdict forms for all four claims— "attempting to sell and in some cases actually selling its products directly to Clear9's customers and potential customers"—could not constitute wrongful conduct as a matter of law.

The four special verdict forms for interference with prospective economic relations asked, "Did Huawei engage in wrongful conduct by attempting to sell and in some cases actually selling its product directly to Clear9's customers or potential customers?" Likewise, in its operative

complaint and throughout the litigation Clear9 explicitly referred to this same conduct as the basis for the breach of the Distribution Agreement.[6]

During discussion of Huawei's motion in limine to exclude evidence of punitive and special damages, Clear9's counsel acknowledged the same conduct constituted a breach of contract *and* formed the basis for the intentional and negligent interference with prospective economic advantage claims. Referring to the claims, he stated "[t]here's an interference aspect of it, but it is a breach of the contract as well." Likewise, in his closing argument, Clear9's counsel asserted Huawei breached the agreement by pursuing customers that Clear9 had exclusive rights to pursue under the Distribution Agreement.

Thus, the record shows unequivocally that Clear9's four interference with prospective economic relations claims were based on conduct that also constituted breach of the Distribution Agreement. As the trial court correctly concluded, the policy of limiting interference with prospective economic advantage claims to conduct that violates the law in some way outside the purview of the parties' contract, precludes recovery here. (See *JRS Products, supr*a,115 Cal.App.4th at p. 179 ["a party to a contract cannot recover damages in tort for breach of contract"].)

---

[6]    The operative complaint's first cause of action for breach of contract alleged Huawei "breached the [Distribution] Agreement by, among other acts, attempting to circumvent or actually circumventing Clear9 to sell equipment to both Flat and Leaco directly, by providing equipment that either did not function properly or did not conform to the customer's requirements, by failing to provide support services, by asserting that the Agreement had expired and that it was no longer obligated to perform its support obligations pursuant to the Agreement, by refusing and failing to comply with the alternative dispute resolution provisions of the Agreement, and by generally acting in bad faith."

D

Clear9's primary argument on appeal, as it was in the trial court, is that Huawei invited the error by not objecting to the special verdict forms. This argument, however, mischaracterizes the proceedings and ignores Clear9's own responsibility to present its claims to the jury. The record shows Huawei did not acquiesce to Clear9's improper framing of the wrongful conduct. Rather, Huawei argued the jury was required to consider whether the conduct identified in the special verdict forms was independently wrongful. Specifically, at the pretrial conference on January 10, 2017, Huawei asserted its position that there was no tortious conduct alleged by Clear9 that fell outside the bounds of the Distribution Agreement. During a discussion about the contract's limitation of liability provision, Huawei stated that all of the tort claims advanced by Clear9 were in essence breach of contract claims. Likewise, Huawei's motion in limine seeking to exclude evidence of special and punitive damages asserted the Distribution Agreement precluded all of Clear9's tort claims, stating "this is a simple breach of contract case" and to "avoid payment obligations under the Distributor Agreement, Clear9 preemptively filed this lawsuit alleging" Huawei breached the agreement and, "[k]nowing that its contract claim[s] lacked merit," Clear9 "padded its lawsuit with . . . tortious interference claims . . . ."

The same is true regarding the preparation of the special verdict forms and the related jury instructions. At the initial pretrial conference in October both parties submitted proposed verdict forms. For the interference with prospective economic relations claims, Huawei submitted forms that asked the jury if Huawei "engaged in independently wrongful conduct." Clear9's proposed forms asked, more specifically, "did Huawei engage in conduct to

15

impair Clear9's ability to sell equipment to [Flat/Leaco/Third Parties]?" Revised forms submitted two days later did not alter the jury questions for these claims.

Before the trial began in January, Huawei proposed the same verdict forms it proposed in October while Clear9 revised its proposed forms to state: "Did Huawei engage in conduct to impair Clear9's ability to sell equipment to [Leaco/Flat Wireless]?" At the conference about the forms after the close of evidence, the court and parties discussed revised forms submitted the prior day (and not included or identified in the record) but did not specifically discuss the final versions of the forms given to the jury.

With respect to the jury instructions for the prospective interference with economic relations claims, at the instruction conference, Huawei requested a special instruction that stated:

> "To prevail under the fifth element of interference with a prospective economic relationship, Clear9 Communications, LLC has the burden of proving that Huawei Technologies USA, Inc.'s conduct was 'independently wrongful'—i.e., wrongful by some measure beyond the fact of the interference itself. An act is independently 'wrongful' if it is 'proscribed by some constitutional, statutory, common law or other determinable standard." ¶ Ordinary competition, such as advertising or solicitation, does not meet this standard. A company has a right to select with whom to do business and on what terms.'"

Clear9 objected, arguing that the standard CACI instruction was sufficient and the court refused the special instruction.[7]

At the continued conference on jury instructions the following morning, the same special instruction was discussed. Huawei's counsel asserted the instruction was required under *Korea Supply* and it would be error not to give it. The court then reversed its earlier decision, and agreed to give the instruction. When the instructions were read, a slightly different version of Huawei's proposed special instruction was given to the jury: "The plaintiff must show that the defendant's conduct was independently wrongful. An act is not independently wrongful merely because the defendant acted with improper motive. An act is independently wrongful and it is unlawful, that is, if it is prescribed by some constitutional, statutory, regulatory, or common law or some other determinable legal standard."

This record shows that Clear9's assertion that Huawei acquiesced to legally invalid verdict forms is inaccurate. Rather, Huawei asserted consistently that the conduct at issue was encompassed by the contract and, therefore, not actionable as a tort. This timeline also shows that Huawei

---

[7]     The CACI instruction, No. 2022, states: "[*Name of plaintiff*] claims that [*name of defendant*] intentionally interfered with an economic relationship between [*him/her/ . . . it*] and [*name of third party*] that probably would have resulted in an economic benefit to [*name of plaintiff*]. To establish this claim, [*name of plaintiff*] must prove all of the following: ¶ 1. That [*name of plaintiff*] and [*name of third party*] were in an economic relationship that probably would have resulted in an economic benefit to [*name of plaintiff*]; ¶ 2. That [*name of defendant*] knew of the relationship; ¶ 3. That [*name of defendant*] engaged in [specify conduct determined by the court to be wrongful]; ¶ 4. That by engaging in this conduct, [*name of defendant*] [intended to disrupt the relationship/ [or] knew that disruption of the relationship was certain or substantially certain to occur]; ¶ 5. That the relationship was disrupted; ¶ 6. That [*name of plaintiff*] was harmed; and ¶ 7. That [*name of defendant*]'s conduct was a substantial factor in causing [*name of plaintiff*]'s harm." (Judicial Council of California Civil Jury Instruction 2202.)

17

wanted the jury to answer the question of whether it engaged in "independently wrongful conduct," but that Clear9 sought to focus the jury's inquiry on conduct that fell within the framework of the Distribution Agreement, i.e., Huawei's sales and attempted sales of its products directly to Leaco and Flat. In the end the verdict forms submitted to the jury were the result of Clear9's litigation strategy, not Huawei's acquiescence.

The cases Clear9 relies on to support its contention that Huawei invited an error on the special verdict form, thus forfeiting its challenge to the verdict on these claims, are inapposite. These cases concern problems with the verdict forms themselves. (See *Taylor v. Nabors Drilling USA, LP* (2014) 222 Cal.App.4th 1228, 1242-1243 [verdict form contained a typographical error causing jury to skip two questions. Defendant forfeited challenge where it failed to identify typo and there was no prejudice to it since other parts of form made it clear the jury intended to find liability]; *Henrioulle v. Marin Ventures, Inc.* (1978) 20 Cal.3d 512, 521 [holding failure to object to improper verdict based on fact that majority of jury did not assent to each special verdict question resulted in forfeiture], and *Greer v. Buzgheia* (2006) 141 Cal.App.4th 1150, 1158-1159 [defendant forfeited challenge to portion of damages where special verdict form did not designate separate categories of damages at issue].) Here, it is not the special verdict forms that are the source of the error. Rather, the error is based in Clear9's theory of liability for these claims. As the trial court concluded, the doctrine of invited error does not apply, and nothing deprived the court of its ability to rule on Huawei's motion for JNOV.

E

Clear9 next argues that even if Huawei's sales to Clear9's customers cannot form the basis for the interference with prospective economic relations

18

claims, the jury's verdict can be substantiated with evidence of other wrongful conduct by Huawei.

As an initial matter, "[w]ith a special verdict, we do not imply findings on all issues in favor of the prevailing party, as with a general verdict. [Citation.]  The verdict's correctness must be analyzed as a matter of law." (*Trujillo v. North County Transit Dist.* (1998) 63 Cal.App.4th 280, 285.)  "A special verdict presents to the jury each ultimate fact in the case, so that 'nothing shall remain to the Court but to draw from them conclusions of law.' (Code Civ. Proc., § 624.)  This procedure presents certain problems:  ' "The requirement that the jury must resolve every controverted issue is one of the recognized pitfalls of special verdicts.  '[T]he possibility of a defective or incomplete special verdict, or possibly no verdict at all, is much greater than with a general verdict that is tested by special findings . . . .' " ' " (*Trujillo, supra,* at p. 285.)  In other words, this court cannot imply factual findings when a special verdict form is used.  (*Saxena v. Goffney* (2008) 159 Cal.App.4th 316, 324-329 ["A special verdict form is 'fatally defective' if it does not allow the jury to resolve every controverted issue."].)  Because the conduct set forth by Clear9 on appeal was not put before the jury, this court cannot infer the jury's findings in Clear9's favor.

Even if such factual findings could be inferred, the additional conduct that Clear9 alleges could support the claims suffers from the same defect as the conduct stated in the special verdict forms—i.e., it consists of additional *breaches of the Distribution Agreement* by Huawei.  Specifically, Clear9 argues Huawei "actively interfered in Clear9's contract with Leaco;" that Huawei was "inducing Clear9 to solicit business from Tier 3 carriers (such as Leaco, Flat Wireless, and United Wireless) . . . then selling or attempting Huawei equipment to sell to those customers [sic];" "actively encouraging

19

Leaco to not purchase extended support from Clear9 and then selling or attempting to sell its products to Leaco to be paid for with funds which would have otherwise been paid to Clear9;" "refusing to provide support for Leaco…;" "excluding Leaco from its user group for Huawei products;" and that Huawei "put Clear9 in a false light with its customers" and "destroyed the hosted wireless network solution devised by Eric Steinmann and Clear9."

This conduct all falls within the purview of the contract between the parties and was alleged as breaches of the Distribution Agreement by Clear9. The operative complaint's claim for breach of contract alleges Huawei breached the Distribution Agreement by: (1) circumventing Clear9 to sell directly to Flat and Leaco; (2) providing equipment that did not function or that did not conform to customer's requirements; (3) failing to provide support services; (4) falsely claiming the agreement was expired; (4) refusing to comply with the agreement's dispute resolution provision; (5) and generally acting in bad faith. The conduct outlined in Clear9's appellate briefing all falls within Clear9's pleading of its breach of contract claim. Thus, it cannot be wrongful for purposes of Clear9's claims for interference with prospective economic relations.[8]

## II

### *Special Damages*

Clear9 next argues it "was not permitted to recover its damages because the [trial] court improperly granted Huawei's motion in limine to preclude Clear9 from presenting evidence of its damages, and then it

---

[8]    Clear9's argument that "[t]here was substantial evidence of future economic benefit between Clear9, on the one hand, and Flat and Leaco, on the other" and its assertion that the trial court erred by granting Huawei's motion for a new trial in the alternative are moot in light of our affirmance of the JNOV order.

improperly limited the damages Clear9 could recover in its ruling on the motion for JNOV."

A

As an initial matter, the record shows that the trial court did not grant Huawei's motion in limine with respect to special damages, and that Clear9 agreed punitive damages should be bifurcated from liability.[9] Rather, the court ruled that all compensatory damage evidence was permissible, subject to later objection by counsel. Clear9 also provides no explanation of any evidence it was prevented from introducing at trial nor does it cite a single instance of the trial court precluding damage evidence. We deem this portion of the argument waived. (See *Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856 (*Duarte*) ["It is the duty of a party to support the arguments in its briefs by appropriate reference to the record, which includes providing exact page citations. [Citations.] If a party fails to support an argument with the necessary citations to the record, that portion of the brief may be stricken and the argument deemed to have been waived."].)

With respect to the portions of the JNOV ruling concerning damages, Clear9 appears to argue (1) the limitation of liability provision contained in the Distribution Agreement applies only to damages from purchases of defective equipment; (2) the provision is unenforceable because it fails of its essential purpose; and (3) that the provision does not apply to sales outside of the Distribution Agreement.

In its order granting JNOV, the court found that the contract damages award of $88,000 equated to the bond payment made by Clear9 as required

---

[9] None of the special verdict forms for Clear9's five tort claims asked the jury to determine if Huawei was guilty of malice, oppression or fraud in accordance with Civil Code section 3294, and Clear9 never raised the issue of punitive damages after the parties agreed to bifurcate.

by its separate agreement with Leaco, and that the bond payment was special, not general, contract damages. The court then found the award was excluded by the Distribution Agreement's limitation of liability provision, which explicitly disallowed special damages. In accepting Huawei's position that the bond payments constituted special damages, the court stated "if there was evidence indicating the bond-issue was contemplated by the parties before or at the time of contracting, it was not cited to by Clear9. Furthermore, no argument is made nor is any evidence cited indicating that such damages were reasonably foreseeable."

Because we affirm the trial court's JNOV order with respect to Clear9's four claims for interference with prospective economic relations, Clear9's arguments concerning the damages for these claims are moot. Additionally, the trial court ruled the limitation of liability contained in the Distribution Agreement was inapplicable to Clear9's claim for tortious interference with contract, a ruling we affirm in Section V of this opinion, so Clear9's arguments are also inapplicable to this claim. Thus, this challenge relates only to the $88,000 awarded for Huawei's breach of the Distribution Agreement.

B

"Generally, 'a limitation of liability clause is intended to protect the wrongdoer defendant from unlimited liability.' (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 503, pp. 552-554.) Clauses of this type 'have long been recognized as valid in California.' [Citation.] With respect to claims for breach of contract, limitation of liability clauses are enforceable unless they are unconscionable, that is, the improper result of unequal bargaining power or contrary to public policy." (*Food Safety Net Services v. Eco Safe Systems USA, Inc.* (2012) 209 Cal.App.4th 1118, 1126.) "Whether

an exculpatory clause 'covers a given case turns primarily on contractual interpretation, and it is the intent of the parties as expressed in the agreement that should control. When the parties knowingly bargain for the protection at issue, the protection should be afforded. This requires an inquiry into the circumstances of the damage or injury and the language of the contract; of necessity, each case will turn on its own facts.' " (*Burnett v. Chimney Sweep* (2004) 123 Cal.App.4th 1057, 1066.)

The Distribution Agreement's main limitation of liability is found in section 10 of the contract. The provision's first subsection, "A," states:

> "**No Other Damages**. IN NO EVENT WILL COMPANY BE
> LIABLE FOR ANY REASON WHATSOEVER TO
> DISTRIBUTOR OR ANY THIRD PARTY FOR LOST PROFITS,
> DIMINUATION OF GOOD WILL, OR ANY OTHER INDIRECT,
> INCIDENTAL, CONSEQUENTIAL, PUNITIVE OR OTHER
> SPECIAL DAMAGES SUFFERED BY DISTRIBUTOR, ITS
> CUSTOMERS OR OTHERS ARISING OUT OF OR RELATED
> TO THIS AGREEMENT OR THE PRODUCTS, REGARDLESS
> OF THE CAUSE OF ACTION (WHETHER IN TORT,
> CONTRACT, NEGLIGENCE, STRICT LIABILITY, BREACH OF
> WARRANTY OR OTHERWISE), EVEN IF COMPANY HAS
> BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES."

Clear9 also points to another provision of the Distribution Agreement, section 8 titled "Product Warranty Matters." This provision contains a subsection titled "No Damages" that states Huawei's liability and responsibility to Clear9

> "for any allegedly defective Product or part shall be limited to
> repair or replacement of the Product or part, at [Huawei's]

option.  COMPANY'S LIABILITY, IF ANY, FOR DAMAGES RELATING TO DEFECTIVE PRODUCTS OR PARTS SHALL NOT EXCEED DISTRIBUTOR'S PURCHASE PRICE FOR THE PRODUCTS OR PARTS IN QUESTION."

Relying on two unpublished federal district court opinions, *Spy Phone Labs, LLC v. Google Inc.* (C.D. Cal. Oct. 14, 2016, Case No. 2016-cv-03756-KAW) 2016 U.S. Dist. LEXIS 143530 (*Spy Phone*) and *Darnaa, LLC v. Google Inc.* (C.D. Cal. Dec. 2, 2015, Case No. 2015-cv-03221-RMW) 2015 U.S. Dist. LEXIS 161791 (*Darnaa*), Clear9 argues that section 10 is wholly invalid because it applies to intentional conduct.  This argument is unavailing.  Even if these cases were authoritative, which they are not, both concern an evaluation of the unconscionability of liability limitations and the application of Civil Code section 1668[10] (which precludes limitations on liability for intentional wrongs) as it related to the plaintiffs' tortious interference with prospective economic advantage claims.  (*Spy Phone, supra*, 2016 U.S. Dist. 143530, pp. *33-*36; *Darnaa*, 2015 U.S. Dist. LEXIS 161791, pp. *13-*16.) These cases do not hold that limitations of liability are invalid as applied to breach claims, as Clear9 argues, and Clear9 makes no assertion that the Distribution Agreement or its limitation of liability provisions are unconscionable.

Clear9 next asserts that the limitation of liability contained in section 10 must be read together with section 8, and that together these provisions make clear that the contract's limitation of liability "is only concerned with purchases of equipment" and "not to other breaches of the Agreement which might arise, such as circumventing the right of Clear9 to sell to certain

10     Subsequent undesignated statutory references are to the Civil Code.

24

customers." Clear9 in essence argues that the narrower provision governing product warranty found in section 8 of the Distribution Agreement should be applied to eliminate the broader limitation of liability provision contained in section 10. As the trial court did, we reject this illogical interpretation of the contract. (*See County of Marin v. Assessment Appeals Bd.* (1976) 64 Cal.App.3d 319, 325 [the court shall avoid an interpretation which will make a contract extraordinary, harsh, unjust, inequitable or which would result in absurdity].) The limitation in section 8 applies to defective products but does not limit the broader protection afforded Huawei under section 10.[11]

As noted, the trial court found that section 10's limitation of special damages precluded recovery of the bond payment amount awarded by the jury. "[D]amages must be 'foreseeable' to be recoverable for breach of contract. The seminal case announcing this doctrine, still generally accepted as a limitation on damages recoverable for breach of contract, is *Hadley v. Baxendale* (1854) 156 Eng.Rep. 145. First, general damages are ordinarily confined to those which would naturally arise from the breach, or which might have been reasonably contemplated or foreseen by both parties, at the time they made the contract, as the probable result of the breach. Second, if special circumstances caused some unusual injury, special damages are not recoverable therefor unless the circumstances were known or should have been known to the breaching party at the time he entered into the contract. The requirement of knowledge or notice as a prerequisite to the recovery of

---

[11] Without citation to legal authority, Clear9 also argues that because the only remedy afforded by the Distribution Agreement is repair and replace as set forth in section 8, the limitation of liability provision fails of its essential purpose and cannot be enforced. Because we reject the interpretation of these two contract provisions, this argument does not merit attention. We also decline to address Clear9's assertion that the limitation of liability provision does not apply to sales outside the Distribution Agreement, since that argument has no connection to the bond payment damages at issue.

special damages is based on the theory that a party does not and cannot assume limitless responsibility for all consequences of a breach, and that at the time of contracting he must be advised of the facts concerning special harm which might result therefrom, in order that he may determine whether or not to accept the risk of contracting. (1 Witkin, Summary of Cal. Law, supra, Contracts, § 815, p. 733.)" (*Brandon & Tibbs v. George Kevorkian Accountancy Corp.* (1990) 226 Cal.App.3d 442, 454-456.)

Clear9 provides no argument concerning whether the bond payments were contemplated by the parties and, therefore, were improperly characterized as special damages. Thus, we have no basis to upset the court's ruling on this ground. Accordingly, we reject Clear9's challenge to the trial court's decision to grant Huawei's motion for JNOV as to the damages awarded for breach of the Distribution Agreement.

## III

*Clear9's Motion to Amend Its Complaint During Trial*

### A

Clear9 next argues that the trial court abused its discretion by denying a mid-trial motion to add a claim for breach of contract related to sales made to Leaco outside the Distribution Agreement. Clear9 provides no citation to the record to support this contention, and denial on this basis would be appropriate. (See *Duarte, supra,* 72 Cal.App.4th at p. 856 ["It is the duty of a party to support the arguments in its briefs by appropriate reference to the record, which includes providing exact page citations."].) Affirmance on the merits is also appropriate here. During the presentation of evidence, after the testimony of Chua, Clear9 moved to amend its pleadings to add another claim for breach of contract.

26

The court asked Clear9 to brief the motion, and shortly before the case was submitted to the jury, Clear9 filed its papers. Clear9 argued that Chua had testified, for the first time, that the Distribution Agreement did not cover the sale of all of the equipment at issue. Clear9's motion argued that this testimony showed that Huawei had breached "an agreement separate and apart from the Distribution Agreement" and it asked the court to "allow Clear9 to pursue its claim for damages based on the sale of the equipment not covered by the Distribution Agreement."

At a conference the next day, Huawei argued the proposed amendment was not warranted because Clear9 was not changing its theory of liability, rather it was attempting to avoid the limitation of liability provision in the Distribution Agreement. Clear9's counsel responded that an amendment was necessary in case the jury found that the Distribution Agreement did not cover the faulty equipment Clear9 claimed caused its damage. The court denied the motion, noting that because Clear9's theory throughout the litigation was that all of the sales were encompassed by the Distribution Agreement an amendment was unnecessary.

B

" '[Code of Civil Procedure section] 469 specifically governs motions to amend at trial to conform to proof . . . . [It] provides in relevant part as follows: "No variance between the allegation in a pleading and the proof is to be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits." Such amendments at trial to conform to proof, "if not prejudicial, are favored since their purpose is to do justice and avoid further useless litigation." . . .' "
" ' . . . "[T]he allowance of amendments to conform to the proof rests largely in the discretion of the trial court and its determination will not be disturbed

27

on appeal unless it clearly appears that such discretion has been abused . . . .” ’ ” (*Duchrow v. Forrest* (2013) 215 Cal.App.4th 1359, 1378.)

“ ‘ “Such amendments have been allowed with great liberality “and no abuse of discretion is shown unless by permitting the amendment *new and substantially different issues are introduced in the case or the rights of the adverse party prejudiced . . . .*” . . .’ Conversely, ‘ “amendments of pleadings to conform to the proofs should not be allowed when they raise new issues not included in the original pleadings and upon which the adverse party had no opportunity to defend . . . .” ’ ” (*Duchrow v. Forrest, supra*, 215 Cal.App.4th at p. 1378.) “As stated by a leading treatise, in ruling on a motion to amend a complaint to conform to proof, ‘the court is usually guided by whether: [¶] . . . there is a *reasonable excuse* for the delay; [¶] . . . the change relates to the *facts* or only to legal theories; and [¶] . . . the opposing party will be *prejudiced* by the amendment.’ (Wegner et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 2012) ¶ 12:393, p. 12-79, original italics.)” (*Duchrow, supra,* at pp. 1378-1379.)

C

We reject Clear9’s claim that the trial court’s denial of its motion to amend its complaint to conform to Chua’s testimony was an abuse of discretion. Clear9 wanted to add a new breach of contract claim near the close of trial based solely on Chua’s answer “no” to the question of whether “the sale to Clear9 for the Leaco network of the PDNS and the media gateway was covered by the distributor agreement.” Clear9 offered no explanation for its delay in pursuing this alternative theory of liability (i.e., that it purchased equipment from Huawei under a separate agreement), and it concedes that had the court allowed an amendment, it would have required additional evidence and, presumably, investigation into the issue by both

28

parties. The trial court's refusal to allow this last-minute change in strategy was not an abuse of the court's wide discretion.

IV

*Motion for Prejudgment Interest*

Finally, Clear9 argues it was entitled to receive an award of prejudgment interest under section 3287, subdivision (a). We disagree. If the requirements of section 3287 are met, an award of prejudgment interest is mandatory. (*North Oakland Medical Clinic v. Rogers* (1998) 65 Cal.App.4th 824, 828-829.) "The denial of prejudgment interest under section 3287, subdivision (a) presents a question of law we must review on an independent basis." (*Employers Mutual Casualty Co. v. Philadelphia Indemnity Ins. Co.* (2008) 169 Cal.App.4th 340, 347.)

Section 3287, subdivision (a), provides in part: "A person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in the person upon a particular day, is entitled also to recover interest thereon from that day, except when the debtor is prevented by law, or by the act of the creditor from paying the debt." Damages are deemed certain when, though the parties dispute liability, they essentially do not dispute the computation of damages, if any. (*Wisper Corp. v. California Commerce Bank* (1996) 49 Cal.App.4th 948, 958.) " '[T]he certainty requirement of section 3287, subdivision (a) has been reduced to two tests: (1) whether the debtor knows the amount owed or (2) whether the debtor would be able to compute damages.' [Citation.]" (*Polster, Inc. v. Swing* (1985) 164 Cal.App.3d 427, 434-435.) "The statute does not authorize prejudgment interest where the amount of damage, as opposed to the determination of liability, 'depends upon a judicial determination based upon conflicting evidence and is not ascertainable from

29

truthful data supplied by the claimant to his debtor.' [Citations.]" (*Fireman's Fund Ins. Co. v. Allstate Ins. Co.* (1991) 234 Cal.App.3d 1154, 1173.)

Here, there is no question that the parties disputed the computation of damages. Indeed, as the trial court noted, Clear9's motion in the trial court provided no evidence to support its claim that Huawei had knowledge before trial of the requisite facts to discern the amount of damages claimed by Clear9. As Huawei points out, neither Clear9's complaint nor its answer to pointed interrogatory requests for this information identified the amount of damages Clear9 sought by this litigation. The trial court's conclusion that an award of prejudgment interest was not appropriate was not error.

V

*Interference with Clear9's Contractual Relations with Leaco*

In its cross-appeal, Huawei asserts that the damages awarded for its tortious interference with Clear9's contract with Leaco are precluded by the limitation of liability provision in the Distribution Agreement. With respect to this claim, the jury awarded $302,890, which was the amount that Clear9 gave in discounts to Leaco related to the ongoing failure of Huawei's equipment.

A

The elements of the "cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 55.) "Because interference with an existing contract receives greater solicitude than does interference with prospective economic

30

advantage [citation], it is not necessary that the defendant's conduct be wrongful apart from the interference with the contract itself." (*Ibid*.; *Ixchel, supra*, 2020 WL 4432623, at *5.)

As the Supreme Court "explained in [*Della Penna*], *supra*, 11 Cal.4th at page 392, it is necessary to distinguish the tort of interference with an existing contract [from the tort of interference with a prospective economic advantage] because the exchange of promises which cements an economic relationship as a contract is worthy of protection from a stranger to the contract. Intentionally inducing or causing a breach of an existing contract is therefore a wrong in and of itself. Because this formal economic relationship does not exist and damages are speculative when remedies are sought for interference in what is only prospective economic advantage, *Della Penna* concluded that some wrongfulness apart from the impact of the defendant's conduct on that prospect should be required. Implicit in the *Della Penna* holding is a conclusion that this additional aspect of wrongfulness is not an element of the tort of intentional interference with an existing contract." (*Quelimane Co. v. Stewart Title Guaranty Co., supra,* 19 Cal.4th at pp. 55-56; see also *Ixchel, supra*, 2020 WL 4432623, at *4 [" 'courts provide a damage remedy against third party conduct intended to disrupt an existing contract precisely because the exchange of promises resulting in such a formally cemented economic relationship is deemed worthy of protection from interference by a stranger to the agreement' "].)

## B

Huawei argues that the limitation of liability found in the Distribution Agreement precluded the damages awarded by the jury for Clear9's claim of interference with its separate contractual relationship with Leaco. The trial court rejected this argument, concluding that because Huawei's conduct was

31

intentional, public policy precluded the enforcement of the limitation of liability provision in the Distribution Agreement. The court's order also stated that Huawei's argument improperly "assumes that the interference 'arises' from a breach of the [Distribution Agreement]," not Clear9's contract with Leaco.

It is Huawei's burden on appeal to show that this claim should be precluded by the Distribution Agreement. (See, e.g., *In re Marriage of McLaughlin* (2000) 82 Cal.App.4th 327, 337 [" 'The burden is on the appellant in every case to show that the claimed error is prejudicial; i.e., that it has resulted in a miscarriage of justice.' "].) Huawei, however, provides no explanation to tether the intentional interference with contract claim to the Distribution Agreement and fails to sufficiently explain why the trial court's ruling that public policy prevented the application of the liability limitation to the claim was error. Huawei concedes that "California public policy precludes parties from limiting liability for <u>intentional</u> conduct," but asserts only that this rule does not apply because Clear9's interference with contractual relations claim, like the interference with prospective economic advantage claims, is based on a breach of the Distribution Agreement.

The law that applies to intentional interference with contractual relations, however, is different in a critical way. As the trial court stated, "[b]ecause interference with an existing contract receives greater solicitude than does interference with prospective economic advantage [citation], it is not necessary that the defendant's conduct be wrongful apart from the interference with the contract itself." (*Quelimane Co. v. Stewart Title Guaranty Co., supra*, 19 Cal.4th at p. 55.) The same reasoning supports the trial court's conclusion that the fact the conduct also breached the Distribution Agreement does not preclude Huawei's liability for interfering

32

with Clear9's contract with Leaco.  Unlike a claim for interference with a *prospective* economic relationship, "courts provide a damage remedy against third party conduct intended to disrupt an *existing* contract precisely because the exchange of promises resulting in such a formally cemented economic relationship is deemed worthy of protection from interference by a stranger to the agreement."  (*Della Penna, supra*, 11 Cal.4th at p. 392, italics added.)  On the other hand, "[e]conomic relationships short of contractual . . . stand on a different legal footing as far as the potential for tort liability is reckoned.  Because ours is a culture firmly wedded to the social rewards of commercial contests, the law usually takes care to draw lines of legal liability in a way that maximizes areas of competition free of legal penalties."  (*Ibid;* see *Ixchel, supra,* 2020 WL 4432623, at \*4.)

Unlike interference with a prospective economic relationship, the economic rationale of free competition does not preclude liability where a contracting party intentionally interferes with its contracting partner's other existing contracts.  Clear9's contract with Leaco is worthy of protection from tortious interference, regardless of whether the interference also amounts to the breach of the Distribution Agreement.  As the trial court found, this intentional tortious conduct is not subject to the Distribution Agreement's limitation of liability provision.  (See § 1668 ["All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law"]; *Capri v. L.A. Fitness International, LLC* (2006) 136 Cal.App.4th 1078, 1084 [" 'It is now settled . . . under section 1668, "a party [cannot] contract away liability for his fraudulent or intentional acts or for his negligent violations of statutory law," regardless of whether the public interest is

33

affected.' "].)  For these reasons, we reject Huawei's argument and affirm the trial court's order denying Huawei's motions for JNOV and new trial of Clear9's claim for intentional interference with its contract with Leaco.

## DISPOSITION

The order is affirmed.  The parties are to bear their own costs of appeal.


HALLER, Acting P. J.

WE CONCUR:



IRION, J.



GUERRERO, J.